# Ivey *v.* Pioneer Savings & Loan Co.

*Action for Damages for Libel.*

1. *Libel; construction of letter; charge of petit larceny and obtaining money under false pretenses.*—In an action to recover damages for

libel, where the plaintiff complains that the defendant wrote a letter in which he charged him with petit larceny and with the criminal offense of obtaining money under false pretenses, the action is not sustained as to these grounds of complaint, when it is shown that the alleged libellous letter was written by the defendant to his agent in regard to certain charges, which the plaintiff had made for the performance of certain services, and stated in said letter that such charges for the services rendered were so excessive and exhorbitant as to be "simply petit larceny;" neither larceny nor the offense of obtaining money under false pretenses being legally predicable of the act complained of.

2. *Same; definition thereof.*—A letter or other publication, which, in terms, declares that one person had knowingly and corruptly made and attempted to collect against another a charge for services rendered greatly in excess of their fair value, for the.purpose of his own aggrandizement and in moral fraud of the rights of such latter person, is libellous *per se* and actionable as such.

3. *Same; same; facts of this case.*—A letter written by defendant to its agent, stating that plaintiff's fee of $5 for services rendered is "simply petit larceny," that a fee of $1 would be ample, and calling upon the agent to make plaintiff "do the square thing" about the matter, is a libellous communication *per se*, and actionable.

4. *Same; sufficiency of complaint; special damages.*—In an action for libel, a count in the complaint claiming damages to plaintiff *in his business of abstractor*, because of a private business letter of a confidential nature, addressed by defendant to his agent, complaining of certain alleged exorbitant charges made by plaintiff for services in the preparation of an abstract, the only publication charged being its delivery through the post to the person addressed, is not sufficient to support a claim for special damages; there being no allegations of any relations, existent or prospective, between plaintiff and the person to whom the letter was addressed which the letter interrupted.

5. *Same; same.*—Under an action for libel, it is necessary that the complaint should aver that the words complained of were falsely and maliciously published, but the want of the allegation of probable cause is not required.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. GEORGE E. BREWER.

This was an action brought by the appellant, D. M. Ivey, against the appellee, the Pioneer Savings & Loan Company, to recover damages for libel.

The complaint contained five counts. It is unnecessary to set out the 4th and 5th counts. The first three counts, as originally filed, and as amended, were as follows—the italicised portions being added by amendment, after demurrers sustained to the original complaint:

"1. The plaintiff claims of the defendant the sum of, to-wit, twenty-five thousand dollars damages, for falsely, maliciously *and without reasonable or probable cause therefor* publishing of and concerning him in a letter which it wrote and sent to, to-wit, J. E. Stone, at Talladega, Ala., the following matter with intent to defame the plaintiff, viz.:

'The Pioneer Savings and Loan Co.
Incorporated 1886.
'Minneapolis, Minn., Sept. 4th, 1895.
'J. E. Stone, Esq., Talladega, Ala.

'Dear Sir:—We have your report enclosing mortgage and note of Max Jacobs. You state that the bill for bringing down the abstract is $5, and enclose receipt for it from M. D. Ivey. To bring this abstract down the abstractor had to insert three conveyances, and we distinctly will not pay $5 for this service. In other States the charge would be 75 cents, and such a charge as Mr. Ivey makes is simply petit larceny. If you can not get Mr. Ivey to do work for reasonable figures, do not have him do it at all. A charge of $1 in this case is ample to cover the amount of labor, and we are certain there is no law authorizing any such charge as he has made. If you have paid this bill, we want you to collect $4 from Mr. Ivey for overcharge, and do not ask him to do another cent's worth of work for us again in any connection. Get along without it some way, or pay somebody else to do it, unless he makes the matter right. $5 for three entries on an abstract is about the biggest charge we ever heard of. Allowing your bill at $25 for services, $2 for abstract (which is twice what it is worth), and $2.50 for recording, the total amount would be $29.50 less $14.68 received by you; leaves due you $14.82, for which find our check herewith. You must make Mr. Ivey do the square thing in this matter. We also inclose receipt for the two payments from Jacobs.
'Very truly yours,
'The Pioneer Savings and Loan Company,
By G. D. Emery, Attorney.'
'G. D. E.'

"2. The plaintiff claims of the defendant the further and additional sum of, to-wit, twenty-five thousand dollars, for that heretofore on, to-wit, the 4th day of Sep-

tember, 1895, the said defendant *falsely, maliciously and without reasonable or probable cause therefor,* wrote and did send the same through the mails to J. E. Stone at Talladega, Alabama, a letter of and concerning the plaintiff, which letter was in form and substance, to-wit: [Here is set out the letter copied in first count.]

"And said Stone did duly, on to-wit, the 6th day of September, A. D., 1895, receive the same through the mails and did read the same as it was intended by the defendant that he should. Whereby plaintiff was damaged in a great sum, to-wit, twenty-five thousand dollars, hence this suit.

"3. The plaintiff claims of the defendant the further and additional sum of, to-wit, twenty-five thousand dollars, for that heretofore, to-wit, the 4th day of September, 1895, the plaintiff was engaged in business as an abstractor of title to lands in Talladega county, Alabama, and that as such he was employed by one Mr. J. E. Stone, at the request of the defendant, to make an abstract of titles to certain property, to-wit, the property of Max Jacobs, and that as such abstractor he performed the said service and charged the sum of, to-wit, five dollars for the same. The plaintiff made out his bill for his said services against the defendant, receipted the same and turned it over to the said J. E. Stone. The said Stone forwarded the said receipted bill to the said defendant at Minneapolis. Thereupon, upon receipt of the same the said defendant *falsely, maliciously and without reasonable or probable cause therefor,* wrote a letter to the said J. E. Stone and published the same by transmitting it through the mails to the said J. E. Stone at Talladega, Alabama, where he, the said Stone, duly received and read the same, to-wit, on the 6th day of September, 1895. Which said letter was in words and figures as follows : [Here is set out the letter which is copied in the first count.] Whereby the said defendant meant by the language 'And such charge as Mr. Ivey makes is simply petit larceny,' that the said Ivey had made false representations as to the amount of work he had done and the value of his services as such abstractor in the performance of such work, for the purpose by such false pretense of having, or inducing, the defendant to pay more money than it ought to pay therefor, and the said defendant in the use of the language of the said letter,

to-wit, 'You must make Mr. Ivey do the square thing in this matter,' intended and meant to insinuate, that he, the plaintiff, was acting dishonestly.    The plaintiff says, that the said charges and insinuations in the said letter, that 'Such a charge as Mr. Ivey makes is simply petit larceny' and 'You must make Mr. Ivey do the square thing in this matter,' are false charges and insinuations, *and were made maliciously and without reasonable or probable cause therefor*, and by reason of the making of the said charges and of the publication thereof, in the manner aforesaid, the plaintiff has been greatly damaged *in his said business of abstractor*, in the sum of, to-wit, twenty-five thousand dollars.    Hence this suit."

To the 1st, 2d and 3d counts the defendant demurred upon many grounds, which may be summarized as follows : 1.  For that the words set out in said counts of the complaint are not actionable.    2.   For that the words set out in said counts of the complaint do not charge the plaintiff with dishonesty in his business, or incompetency.    3.   For that there is no averment that the plaintiff has sustained any special damages by reason of the words set out in said count of the complaint.  4.  For that the matter set out in said counts of the complaint was a privileged communication between the defendant and its agent, J. E. Stone, as is sufficiently shown by the letter therein incorporated, and no action will lie against the defendant for writing and mailing the same to said J. E. Stone, which defendant did.    5.   For that the said counts of the complaint fail to allege that the letter therein referred to was sent by the defendant to J. E. Stone with malicious intent.    6.   To that portion of the third count of said complaint which alleges that the defendant meant by the language, "And such charge as Mr. Ivey makes is simply petit larceny," that said Ivey had made false representations as to the amount of work he had done and the value of his services as such abstractor in the performance of such work, "for the purpose by such false pretense of having, or inducing, the defendant to pay more than it ought to pay therefor," for that the language used by the defendant to said J. E. Stone is not capable of the construction placed upon the same by the pleader in said count of the complaint, and such construction is merely an erroneous conclusion of the pleader.    7.   For that the innuendo in said count

23

of the complaint which follows the words, "You must make Mr: Ivey do the square thing in this matter," to the effect that the defendant intended and meant to insinuate that he, the plaintiff, was acting dishonestly, is not supported by the language used, and is not a proper or correct inference therefrom.

The demurrers to each of these counts were sustained, and the plaintiff amended each of them so as to make them read as hereinbefore set out, including the italicized clauses. To the complaint and each count thereof as thus amended, the defendant refiled its demurrer, upon the grounds assigned to the original counts. The demurrer to the amended complaint was sustained; and the plaintiff declining to amend or plead further, judgment was rendered for the defendant. From this judgment the plaintiff appeals, and assigns as error the rulings of the court upon the demurrers.

BROWNE & DRYER, for appellant.—1. Every accusation imputing the commission of a crime punishable by indictment must be held presumptively to mean what the language used ordinarily imports.—Code of 1886, § 2726; 13 Amer. & Eng. Encyc. of Law, 347. Words must be understood in their plain and natural import, according to the ideas they are calculated to convey to those to whom they are addressed.—13 Amer. & Eng. Encyc. of Law, 378; 2 Brick. Dig. 206, § 60. If the refinements of judicial construction should declare the language declared on in the first four counts does not impute the commission of the crime of petit larceny, the conclusion can not be escaped that it charges the commission of, or attempt to commit, the crime of obtaining money under false pretenses.—Code of 1886, § 3811; *Iron Age Pub. Co. v. Crudup*, 85 Ala. 519.

2. A distinction has long been known and recognized between libel and slander. Words, when committed to writing and published, are considered as libellous, when if only spoken would not subject the person speaking to any action.—13 Amer. & Eng. Encyc. of Law, 296; *Gaither v. Advertiser Co.*, 102 Ala. 463. A publication imputing small business capacity is libellous *per se. Gaither v. Advertiser Co., supra.* Any words imputing to a man fraudulent or dishonest conduct in business, are actionable *per se.—Ware v. Clowney*, 24 Ala. 707.

[Ivey v. Pioneer Savings & Loan Co.]

3.   Any written words are libellous which impute to the plaintiff that he has been guilty of any crime, fraud, dishonesty, immorality, vice, or dishonorable conduct, or which has a tendency to injure him in his office, profession, calling or trade. It matters not whether the defamatory phrase be grammatical or not, whether cant or slang terms be employed, or the most refined and elegant diction. "The insinuations may be indirect, and the allusion obscure ; it may be put as a question or as an *on dit;* the language may be ironical, figurative or allegorical, still, if there be a meaning in the words at all, the court will find it out, even though it be disguised in a riddle or hieroglyphics." And in all cases of ambiguity, it is purely a question for the jury to decide what meaning the words would convey to a person of ordinary intelligence.—13 Amer. & Eng. Encyc. of Law, 299, 385 ; *Gaither v. Advertiser Co.*, 102 Ala. 458 ; *Johnson v. Robertson*, 8 Port. 486 ; *Booker v. State*, 100 Ala. 30.

4.   If the court should decide the words not libellous *per se*, but of a doubtful meaning, the jury should say whether, under the circumstances, they were libellous, special damages being averred.—*Trimble v. Anderson*, 79 Ala. 514. Published defamatory words, prompted by malice, false, and without probable cause therefor, are not privileged, even if otherwise so. Malice is a question for the jury, and they may infer it from the face of the libel or publication itself.—*White v. Nicholls*, 3 How. 266 ; *Stallings v. Newman*, 26 Ala. 311.

5.   The allegations of special damages contained in the different counts of the complaint were sufficient to support a recovery therefor.—*Wright v. Lindsay*, 20 Ala. 428.

KNOX, BOWIE & DIXON, *contra.*—1. The letter itself which was the basis of this suit, shows upon its face that it was a communication between the company and its agent, and was therefore a privileged communication ; and to recover, the plaintiff must allege that the same was maliciously and falsely published.—Starkie on Slander and Libel, pp. 340 to 362. As to whether the words used were actionable *per se*, it is a question for the court and must be decided by the court on demurrers. *Kirksey v. Fike*, 29 Ala. 206 ; *Henderson v. Hale*, 19 Ala. 154 ; *Trimble v. Anderson*, 79 Ala. 514 ; 2 Greenleaf on Evidence, § 411, note a.

[Ivey v. Pioneer Savings & Loan Co.]

2. The letter published contains nothing which makes the same actionable *per se*, for it charges no offense punishable by indictment, nor contains anything to bring the plaintiff into public hatred, contempt or ridicule; nor charges an act odious or disgraceful in society; nor does it tend to injure the character of the individual or blacken his reputation, nor does it impute fraud, dishonesty nor other immoral turpitude, nor reflect shame and tend to put him without the pale of social intercourse. *Williams v. Cawley*, 18 Ala. 206; *Robinson v. Lea*, 1 Stew. 141; *Henderson v. Hale*, 19 Ala. 154; *Trimble v. Anderson*, 79 Ala. 514; *Ogden v. Riley*, 14 N. J. L. 186; Folkards Starkie on Slander & Libel, § 74.

3. Innuendo can not be used to introduce new matter nor extend the sense of the words beyond their own meaning.—*Kirksey v. Fike, supra; Henderson v. Hale, supra.*

4. The allegations that the defendant was damaged in his business as abstractor is a mere conclusion, which will not support a claim for special damages. Something more specific must be shown to support such a claim, and it must be further shown that the alleged special damages were the natural, direct, or reasonable consequences of the wrongful act.—Starkie on Slander, star page 320.

5. So it is said that the alleged special damages must be attributable wholly to the words, so that where the reason of a person's refusing to employ the plaintiff was founded partly on the defendant's words and partly on the circumstance of his having been previously discharged by another master, it was held that no action was maintainable. Moreover, it is an elementary principle of the law of slander and libel that even if the special damage be alleged and proven, yet if the words complained of are not in their nature defamatory, the verdict can not be supported.—Starkie on Slander, § 389, p. 322; 13 Amer. & Eng. Encyc. of Law, 434; *Cook v. Cook*, 100 Mass. 194; *Pollard v. Lyon*, 91 U. S. 225; *Gaither v. Advertiser Co.*, 102 Ala. 458.

6. The count being bad because the expression contained in the letter is not capable of the meaning ascribed to it by the innuendo, it was the duty of the plaintiff to have offerred to amend the complaint in that respect and failing to do so, the court had a right to sustain the

demurrer generally, and having done so, it is well settled that there can be no reversal even if special damages were properly alleged in the same count, which we have endeavored to show has not been done.—*Guilford & Co. v. Kendall*, 42 Ala. 651; *Montgomery Iron Works v. Dorman*, 78 Ala. 218; *White v. Levy*, 93 Ala. 484.

HEAD, J.—The letter alleged as libellous was a private business letter written by the defendant's attorney, in Minneapolis, Minn., to his client's agent, Mr. Stone, at Talladega, Ala., relative to a note and mortgage made by one Jacobs, and the expenses incurred, presumably, in reference thereto, including the charges of the plaintiff for completing or "bringing down" an abstract of titles. It appears satisfactorily from the letter, that Mr. Stone had attended to the business, in Talladega, for the defendant, and had forwarded to the latter the note and mortgage, together with bills of expenses incurred, viz., $25 for his own services, $2.50 for recording, and $5, plaintiff's charge for bringing down the abstract. The defendant objected to this latter charge as being excessive, and wrote the letter to Mr. Stone, set out in the complaint, which will be reproduced by the reporter.

The plaintiff complains, first, that the letter charges him with petit larceny; second, with the criminal offense of obtaining money by false pretenses; third, that it charges him with dishonesty, fraud and other moral turpitude; and fourth, that the matter published caused him special damages in his business.

As we said in *Iron Age Publishing Company v. Crudup*, 85 Ala. 519, the "definitions of libel, as found in the cases, vary somewhat in phraseology, and are more or less comprehensive, as may be called for by the particular charge involved in the case. Generally, any false and malicious publication, when expressed in printing or writing, or by signs or pictures, is a libel, which charges an offense punishable by indictment, or which tends to bring an individual into public hatred, contempt or ridicule, or charges an act odious and disgraceful in society. This general definition may be said to include whatever tends to injure the character of an individual, or imputes fraud, dishonesty or other moral turpitude, or reflects shame, or tends to put him without the pale

of social intercourse. * * * * In construing the publication complained of, the scope and meaning of the whole must be considered, and interpreted as others would naturally understand it."

It is plain the letter does not impute to Mr. Ivey the commission of a criminal offense. Larceny was not legally predicable of the act complained of, and the statement that the act was "petit larceny" was a misuse of terms, shown and obviated by the communication itself. The same is manifestly true in respect of the statutory offense of obtaining money by false pretenses. The letter does not contain the semblance of a charge that Ivey had falsely represented that he had rendered a service. Indeed, it shows that his representation was that he had entered three conveyances on the abstract, and the letter admits that he had done so, and complains only of the amount charged for the same.

The question of importance is whether the letter charged Ivey with having knowingly and corruptly demanded largely more for the service than it was reasonably worth; and if so, whether such a charge is actionable *per se*. The language pertinent to the question, after showing that the work done by Ivey was to enter three conveyances on the abstract, is as follows: "In other States the charge would be 75 cents, and such a charge as Mr. Ivey makes ($5) is simply petit larceny. If you cannot get Mr. Ivey to do work for reasonable figures do not have him do it at all. A charge of $1.00 is ample to cover the amount of labor, and we are certain there is no law authorizing any such charge as he has made. If you have paid this bill we want you to collect $4 from Mr. Ivey for overcharge, and do not ask him to do another cent's worth of work for us again in any connection. Get along without it, in some way, or pay somebody else to do it, unless he makes the matter right. $5 for three entries on an abstract is about the biggest charge we ever heard of. * * * You must make Mr. Ivey do the square thing in this matter." We are of the opinion that the plain, natural import of this language is that Mr. Ivey, knowingly and corruptly, preferred against the defendant, and undertook to collect, a charge for services rendered, greatly in excess of the reasonable and fair value of the service. The highly excessive charge is repeated with emphasis, and all

further relations with Ivey, in any connection, emphatically forbidden, unless he makes the matter right. The act is given the character of petit larceny, which carries with it the imputation that it was wickedly done; and this thought is accentuated by the injunction that Ivey must be made to do the "*square*" thing in the matter. The term "square" was here used in the sense of the following definitions given by lexicographers: "Rendering equal justice; exact; fair; honest." See Webster. Taken with the context, which denounced the act as grossly unreasonable, and possessing characteristics of larceny, the term "square" was used in this letter in the sense of "honest," and the command was that Ivey must be coerced to do the *honest* thing, which implies, in the connection used, that he had been dishonest.

Hence, the libellous character *vel non* of the publication may be tested by assuming that it, in terms, declared, that the plaintiff had, knowingly and corruptly, made and attempted to collect, against the defendant, a charge for services rendered, greatly in excess of their fair value, for the purpose of his own aggrandizement, and in moral fraud of the rights of the defendant. We think it requires no argument or authority to show that such a publication is libellous *per se* and actionable.

The third count claims only special damages to plaintiff *in his business of abstractor*. The allegations are not sufficient to justify such a recovery. The letter was a private business communication of a confidential nature addressed by a principal to his agent. The only publication of the letter charged was its delivery through the post to the person addressed, who read it. It is not to be assumed that it was read by any other person. There is no allegation of any relations, existent or prospective, between plaintiff and Stone which the letter interrupted, but the allegation is general, that "plaintiff has been greatly damaged in his said business of abstractor." The fact that defendant declined to have further business relations with plaintiff was, of course, independent of the letter complained of, and not to be considered as as a damage to the plaintiff. The defendant had the right so to decline with or without cause; and, indeed, it is no part of the alleged libel. We think the count is not sufficiently specific to show wherein plaintiff suffered

special damage in his business of abstractor, and for that reason the demurrer to it was properly sustained.

It is probable the 4th and 5th counts will not hereafter be insisted upon.

It is neccessary that the complaint aver that the words alleged were falsely and maliciously published, but the allegation of want of probable cause is not required. The first original count was, therefore, good. The second required amendment so as to allege the false and malicious character of the publication. The demurrers to the original first count, and to the same as amended, and to the second count as amended, ought to have been overruled.

Reversed and remanded.