## CRONKHITE v. CHAPLIN.

(Circuit Court of Appeals, Eighth Circuit. August 16, 1922.)

No. 5965.

1. **Trover and conversion ⊙=1—Unauthorized dominion over property essential.**
An unauthorized act of dominion or ownership by one person over the personal property of another is an essential element of conversion.

2. **Mortgages ⊙=298(4)—Grantee entitled to retain deed after payment of debt.**
On delivery of a deed to secure a debt, the deed itself becomes the personal property of grantee, and he is entitled to retain it, after payment of the debt, as a record of the transaction.

3. **Libel and slander ⊙=130—Recording of instrument disparaging realty title, known to be inoperative, actionable.**
The malicious recording of an instrument, known to be inoperative and disparaging the title to land, is a false and malicious statement, for which the damages suffered may be recovered.

4. **Libel and slander ⊙=139—Only special damages recoverable for slander of title.**
In an action for slander of title, only special damages can be recovered, and such damages must be particularly pleaded.

5. **Libel and slander ⊙=139—In action for slander of title, evidence held not to prove damages pleaded.**
In an action for slander of title, evidence *held* not to prove the damages pleaded.

6. **Appeal and error ⊙=1033(8)—Erroneous judgment for plaintiff in error for $1 affirmed.**
Where plaintiff in error complained of a directed verdict in his favor for $1, and the evidence shows that he was not entitled to recover, the judgment will be affirmed, as he was not prejudiced.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Frank Cronkhite against Manville Chaplin. From a judgment entered on a directed verdict for plaintiff, limiting the damages to $1, plaintiff brings error. Affirmed.

Homer N. Boardman, of Oklahoma City, Okl., for plaintiff in error. H. J. Sturgis, of Enid, Okl., for defendant in error.

Before CARLAND, Circuit Judge, and TRIEBER and MUNGER, District Judges.

MUNGER, District Judge. The plaintiff in error (who was plaintiff below) brought an action which he asserts was an action to recover damages for conversion of a deed to real estate and for slander of his title. The court below directed a verdict in his favor, but limited the amount of his damages to $1, and he now complains of this limitation.

The plaintiff's petition alleged, and the evidence established, that he was the owner of a tract of land in Oklahoma, upon which there was a mortgage securing obligations on which plaintiff was also personally liable. At a later period plaintiff executed a warranty deed to a brother of the defendant, which was intended as security for a loan of money made by the grantee. This deed was not filed for record for some time, but whether the failure to file it was in pursuance of some promise not to file it is in dispute. The indebtedness secured by the mortgage as well as that secured by the deed was not paid, and a suit for foreclosure of the mortgage was begun, and a decree of foreclosure entered. After this the deed was filed for record. The plaintiff alleges that he had paid the debt which he owed the grantee in the deed, before the deed was recorded. The liability he asserts against the defendant is stated in this way: He alleges that he had made an oral agreement with the agent of the mortgagee, whereby he was to convey the legal title to the land to the mortgagee, and the mortgagee thereupon would refrain from foreclosure of the mortgage, and would receive the rents and profits of the land to apply on the mortgage until it was satisfied. He alleges he told the grantee in the deed, and also told the defendant, of this agreement, and that the grantee promised to return the deed to him, so that he could make the conveyance to the mortgagee, but the deed was not returned. The plaintiff then paid the debt he owed to the grantee in the deed. Notwithstanding this payment, the grantee failed to return the deed, and plaintiff alleges that the defendant maliciously refused to return the deed, and caused it to be filed of record, took possession of the land, and converted the crops thereon to his own use.

[1, 2] On issues made by denials of the allegations, much testimony was taken; but the questions now involved are in narrow compass. The plaintiff claims that the continued possession of the deed by the defendant and his placing it of record was an act of conversion of the plaintiff's property, for which he was entitled to substantial damages. It is an essential of the wrong called conversion that there be an unauthorized act of dominion or ownership exercised by one person over the personal property of another. 38 Cyc. 2005. The deed

when it was delivered to the grantee became his personal property. It was the evidence of a conveyance, although it was a conveyance securing a debt. The grantor was not entitled to its surrender when the debt was paid in the absence of an agreement to that effect. There was no such agreement here. The grantor might have been entitled to a release or quitclaim from the grantee, but the grantee was entitled to retain the deed as a record of the transaction. As the deed after delivery never became the property of the plaintiff, there was no conversion of his property by any act of the defendant in relation to it.

The second claim of the plaintiff is that the defendant converted to his use the plaintiff's share of the crops upon the land. There is evidence that the plaintiff told the tenant who occupied the land not to deliver this share to the plaintiff, but the evidence is undisputed that the defendant never took possession or control of any of the crops, nor received any portion of them or of the proceeds from them, and also that the tenant himself disposed of all of the crops for his own use.

[3] The third claim of the plaintiff is that the recording of the deed constituted slander of his title to the land. The trial court was of the opinion that this claim was well founded, but that no damages, other than nominal, had been shown, and hence directed a verdict for $1 in favor of the plaintiff. The malicious filing for record of an instrument which is known to be inoperative, and which disparages the title to land, is a false and malicious statement, for which the damages suffered may be recovered. Collins v. Whitehead (C. C.) 34 Fed. 121; Kelly v. First State Bank of Rothsay, 145 Minn. 331, 177 N. W. 347, 9 A. L. R. 929; Coffman v. Henderson, 9 Ala. App. 553, 63 South. 808; Atchafalaya Land Co. v. Brownell-Drews Lumber Co., 130 La. 657, 58 South. 500, Ann. Cas. 1913C, 1358; New Orleans Land Co. v. Slattery, 145 La. 256, 82 South. 215; Chesebro v. Powers, 78 Mich. 472, 44 N. W. 290; Smith v. Autry (Okl. Sup.) 169 Pac. 623.

[4, 5] In such an action only special damages can be recovered, and such damages must be distinctly and particularly set out in the complaint. 25 Cyc. 561; 13 Encyc. Pl. & Pr. 97, and cases cited. There were claims of damages pleaded, alleged to be the result of the failure to return and deliver the deed to the plaintiff, and as the result of the alleged conversion and appropriation to the defendant's use of the deed; but the only damages alleged as a result of the recording of the deed were based on the plaintiff's inability to carry out the alleged oral agreement, heretofore mentioned, with the mortgagee, whereby the plaintiff was to execute to the mortgagee a conveyance of his legal title, and thereupon the mortgagee was to refrain from bringing suit upon the notes and mortgages, or to enforce the plaintiff's personal liability therefor, and it was alleged that a personal judgment was therefore entered against the plaintiff for the amount of the debt. The evidence does not support the allegation of such a contract. The plaintiff's testimony on the subject is as follows:

"I had made an agreement with Chester Woodward, probably six months before this was due, or he partially agreed to do this, to take the deed to the

property, if I could get the title all fixed up, and carry it that way, and then later, or soon after that, I saw him and he told me that he had had a talk with his attorneys, and that they thought that deed would be simply a mortgage, and that it would be practically the same as a mortgage, and that it would have to be foreclosed, and that he didn't know whether it would be better to make a mortgage of it, or to take a deed to it, and suggested I see if I couldn't raise $2,000, and they take a mortgage on it, instead of taking a deed for the place, and then later, when I found I couldn't do that, why he told me, he says, 'I will just have to leave this matter up to my attorneys.' He says, 'I want to do anything I can, but it is liable to complicate things by giving a deed instead of a mortgage.'"

[6] Mr. Woodward denied this agreement, saying that the plaintiff had offered to make a deed to the land, having confidence that reparation would be made, if plaintiff was able to pay the mortgage debt, but the proposal was refused. As this was the only testimony on the subject, the plaintiff was not entitled to recover; but, as the verdict is for $1 in his favor, he has not been prejudiced.

The judgment will be affirmed.

TRIEBER, District Judge. I concur in the result, as well as the reasons stated in the opinion, but desire to add the following as an additional ground for the result:

The undisputed evidence shows that the transaction was between the plaintiff and the brother of the defendant, who is not a party to this suit. The loan was made by and the deed executed to defendant's brother. The defendant had nothing to do with it. The most that can be claimed against the defendant is that he filed the deed for record at the request of his brother; but that is doubtful. The defendant testified that he may have filed the deed at the request of his brother, but is not certain of it, as his brother probably sent it to the register of deeds direct. There is not a particle of evidence justifying a finding that the defendant conspired with his brother Morris to cheat and defraud the plaintiff.