WALLEY *v.* HUNT, et al.

Division A. Oct. 15, 1951.

No. 38024 (54 So. (2d) 393)

Ben **H. Walley,** and **J. W. Backstrom,** for appellant.

Butler, **Snow** & **O'Mara,** for appellee, Geo. D. Hunt.

### Kyle, J.

The appellant, S. A. J. Walley, as complainant, filed his bill of complaint in the Chancery Court of Greene County against George D. Hunt, individually and as trustee, and Thomas Harvey Robinson, individually and as assistant to the trustee, asking for the cancellation of three mineral deeds executed by the defendants and purporting to con-vey to the grantees therein named certain interests in the mineral rights in and to 160 acres of land owned by the complainant in Greene County, and asking for a

decree awarding damages to the complainant for slander of title to said land and for an injunction restraining the defendants from attempting to exercise any rights in and to the minerals on said land. The defendant, George D. Hunt, filed two special demurrers to the bill of complaint, and from a decree sustaining special demurrer No. 2 this appeal is prosecuted.

In special demurrer No. 2 the defendant challenged the complainant's right to recover damages for the alleged slander of complainant's title on the ground that the bill of complaint showed on its face that the complainant's cause of action for slander of title accrued more than one year prior to the commencement of the suit, and that the cause of action for slander of title was barred by the one year statute of limitations, Section 732, Code of 1942. The court sustained the demurrer and in its decree granted to the complainant the right of appeal to this Court for the purpose of settling the principles of law involved in the court's ruling on the special demurrer.

In his bill of complaint the complainant alleged that on May 12, 1937, the defendant, George D. Hunt, trustee, approached the complainant for the purpose of securing an oil lease covering the above mentioned 160 acres of land, and that the complainant, after a discussion of the terms of the proposed lease, agreed to execute an oil lease upon the land; that the defendant prepared the instrument, and that the complainant executed the same relying upon the defendant to prepare the lease instrument according to the terms of the agreement made between the parties; that the complainant, at the time he executed the instrument, thought it was an oil lease, but that sometime thereafter, while examining the records affecting said land, he learned that the instrument was a mineral deed conveying to the said grantee an undivided one-half interest in the minerals on said land; that the complainant immediately thereafter filed suit in the Chancery Court of Greene County for the cancellation of said mineral deed as a cloud on his title to said land;

and that a decree was duly entered in said cause on April 15, 1941, formally cancelling said mineral deed and requiring the complainant to repay to the defendant the consideration recited in said mineral deed.

The complainant further alleged in his bill of complaint that, notwithstanding the cancellation of the above mentioned mineral deed, the defendants, George D. Hunt, trustee, and Thomas Harvey Robinson, assistant to the trustee, thereafter, on June 30, 1944, knowing full well that they did not own any minerals in said land and that the above mentioned mineral deed had been cancelled by order of the chancery court, with malicious intent to injure the complainant, executed a mineral deed conveying to Mrs. Crawford S. Enochs and others fractional interests in and to the minerals on said land, and with like intent, on July 31, 1944, executed another mineral deed conveying to the said George D. Hunt, as an individual, and others, other fractional interests in and to the minerals on said land. The two instruments were filed for record and were duly recorded on August 7, 1944. The complainant further alleged that on July 30, 1945, the defendants executed another mineral deed conveying to T. J. Neal a fractional interest in and to the minerals on said land which was filed for record on January 16, 1946. Copies of said instruments, showing the dates of filing for record and the dates of recording of same, were attached as exhibits to the bill of complaint.

The complainant further stated in his bill of complaint that during the month of August 1948, the Humble Oil and Refining Company, owner of an oil, gas and mineral lease covering said land, entered upon said land for the purpose of drilling an oil well thereon; that a few weeks later the oil company relocated its proposed well on an adjoining tract of land owned by another; that complainant made inquiry of the title man of said oil company as to why the well was not being drilled on his land, and then learned for the first time that the defendants had executed the three mineral deeds pur-

porting to convey interests in the minerals on his land, and had filed the same for record. The complainant further alleged that during the month of October 1948, a prospective buyer offered to purchase the mineral rights in his said land and to pay the sum of $150 per mineral acre for 80 mineral acres; but that because of the mineral deeds executed by the defendants, which cast a cloud upon the complainant's title, the complainant declined to sell said minerals; that the well drilled by the Humble Oil and Refining Company upon the adjoining land proved to be a dry hole and was abandoned; that thereafter there was no market demand for the minerals on complainant's land at any price; and that because of the wrongful acts committed by the defendants in executing the above mentioned mineral deeds purporting to show ownership by the defendants and their grantees. of an undivided one-half interest in the mineral rights in said land, the complainant had been damaged in the sum of $12,000 for which he should be compensated.

"Slander of title" is a phrase commonly employed to describe words or conduct which bring or tend to bring in question the right or title of another to particular property, as distinguished from the disparagement of the property itself. The slander may consist of a statement in writing, printing, or by word of mouth, and may relate to personal as well as real property. In 33 Am. Jur. at page 311, the general rule of liability for slander of title is stated as follows: "One who falsely and maliciously publishes matter which brings in question or disparages the title to property, thereby causing special damage to the owner, may be held liable in a civil action for damages. Thus, an action for slander of title lies for claiming a lease on the plaintiff's property, thereby preventing its lease or sale to another, for forbidding an auction sale of property on the ground that the person offering it has no right to sell it; or for alleging, on the part of a former owner, insanity or an illegal marriage which would render the title defective."

 Words spoken of property are not in themselves actionable. But the publication of false and malicious statements, disparaging of plaintiff's property or the title thereto, when followed, as a natural, reasonable and proximate result, by special damage to the owner, are actionable. The false statement may consist of an assertion that plaintiff has no title to the property of which he is the ostensible owner, or that his title is defective, or that defendant has an interest in or lien upon the property. 37 Corpus Juris, p. 130, Libel and Slander, par. 594; 53 C. J. S., Libel and Slander, Sec. 270; Coffman v. Henderson, 9 Ala. App. 553, 63 So. 808; Moore v. Rolin, 89 Va. 107, 15 S. E. 520, 16 L. R. A. 625. Whatever be the statement, however, in order for it to form the basis of a right of action it must have been made, not only falsely, but maliciously. 37 Corpus Juris, p. 131; 53 C. J. S., Libel and Slander, Sec. 273; 33 Am. Jur. p. 313; 25 Am. & Eng. Ency. Law (2d Ed.) 1078, 1079; 13 Ency. Pl. & Pr. 97; Hill v. Ward, 13 Ala. 310; Ivey v. Pioneer Savings & Loan Co., 113 Ala. 349, 21 So. 531; Moore v. Rolin, supra; Smith County Oil Company v. Jefcoat et ux., 203 Miss. 404, 33 So. (2d) 629.

 Liability for slander of title may also be predicated on the filing and recording of a false instrument purporting to affect the title to property, or on the execution, wilful acceptance, and malicious recordation of a deed which falsely declares the title of the property involved to be in a person other than the true owner. 33 Am. Jur. p. 312. The malicious filing for record of an instrument which is known to be inoperative, and which disparages the title to land, is a false and malicious statement, for which the damages suffered may be recovered. Cronkhite v. Chaplin, 8 Cir., 282 F. 579; Collins v. Whitehead, C. C., 34 F. 121; Coffman v. Henderson, 9 Ala. App. 553, 63 So. 808; Atchafalaya Land Co. v. Brownell-Drews Lumber Co., 130 La. 657, 58 So. 500, Ann. Cas. 1913C, 1358; New Orleans Land Co. v. Slattery,

145 La. 256, 82 So. 215; Chesebro v. Powers, 78 Mich. 472, 44 N. W. 290; Smith v. Autry, 69 Okl. 28, 169 P. 623.

In Collins v. Whitehead, supra, the plaintiff entered into negotiations with the defendants which resulted in an offer by the plaintiff to sell certain land to the defendants. A deed was sent to a bank, to be delivered to the defendants on payment of the purchase price. The defendants, claiming to have discovered a defect in the title, did not take the property within the time specified by the agreement, but applied to the plaintiff for an extension of time, which request was refused. Subsequently the defendants, wilfully and without cause, filed in the office of the records of deeds a paper which stated [34 F. 122] that they had "bargained for and bought" the property of the plaintiff, and that they claimed the right to enforce the contract. It was held that the plaintiff was entitled to recover as for defamation of title.

In Smith v. Autry, supra, the defendants in error, in order to secure a loan from the plaintiff in error, executed a mortgage on certain lots owned by them. It was later discovered that the plaintiff in error had filed of record in the office of the register of deeds a warranty deed puporting to have been executed by the defendants and purporting to be an absolute conveyance of said property. This was held to be sufficient to warrant a recovery for damages sustained. In Coffman v. Henderson, supra, the court held that an action for damages for filing, or causing to be filed, a notice of lien upon plaintiff's land and refusing to cancel the same is in the nature of a suit for slander of title and is governed by the rules applicable to such actions. In the case of Greenlake Investment Company v. Swarthout, 161 S. W. (2d) 697 (St. Louis Court of Appeals), the court held that a petition alleging that the defendants recorded a false and malicious statement that they had a lien against plaintiff's real estate was good against general demurrer, though special damages were not alleged and the in-

strument filed by the defendants allegedly did not in law amount to a lien.

In the case of Kelly v. First State Bank, 145 Minn. 331, 177 N. W. 347, 9 A. L. R. 929, the court held that the utterance of false and malicious statements disparaging the title to property in which one has an interest, if the statements are untrue, and cause damage, constitute slander of title; and that filing for record an instrument known to be inoperative is a false statement within the rule, and if done maliciously it is regarded as slander of title. In that case the court said, "It is clear, however, that if a man does no more than file for record an instrument which he has a right to file, he commits no wrong."

The complainant in the case that we now have before us alleged that the mineral deeds executed by the defendants and filed for record on August 7, 1944, and on January 16, 1946, ▉▉ were executed by the defendants wilfully and with knowledge that the defendants had no interest in the mineral rights in complainant's land, and that said deeds were executed with the malicious intent to injure the complainant. For the purpose of disposing of the special demurrer the allegations of the bill must be taken as true, and the only question presented for consideration by the court on this appeal is whether the complainant's cause of action for slander of title, to recover monetary damages on account of the execution and recordation of the mineral deeds complained of, is barred by the statute of limitations.

▉▉ Section 732, Code of 1942, reads as follows: "All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, and for libels, shall be commenced within one year next after the cause of such action accrued, and not after."

In the case of Forman v. Mississippi Publishers Corporation, 195 Miss. 90, 14 So. (2d) 344, 347, 148 A. L. R.

469, this Court held that the statute of limitations in an action for libel begins to run from the date of the first publication of the newspaper containing the allegedly libelous article, that the cause of action accrues and the right to sue becomes vested at that time. The Court in that case said: ''Since the gravamen of the offense is not the knowledge by the plaintiff nor the injury to his feelings but the degrading of reputation, the right accrued as soon as the paper was exhibited to third persons in whom alone such repute is resident. Cf. McCarlie v. Atkinson, 77 Miss. 594, 27 So.. 641, 78 Am. St. Rep. 540. The tort is then complete even though the damage may continue or even accumulate.''

In a memorandum opinion in King v. Miller, 35 Ga. App. 427, 133 S. E. 302, the court said: ''In an action for false, slanderous, and malicious words impugning the title to the plaintiff's lands (Civil Code 1910, § 4479), the right of action accrues to the plaintiff upon the doing of the act complained of, just as in injuries to personal reputation (Irvin v. Bentley, 18 Ga. App. 662, (3), 90 S.E. 359); consequently there was no error in. sustaining the general demurrer to the petition, as it affirmatively appeared from the petition that the attack made by the defendant on the title to lands of the plaintiff was made by the latter more than four years prior to the filing to the action.''

The bill of complaint in the case that we now have before us was filed on August 31, 1949, approximately five years after the date of the filing for record of the first two mineral deeds, and approximately three and one-half years after the date of the filing for record of the third mineral deed.

The appellant in his brief contends that the cause of action accrued and the statute of limitations began to run only from the date when the false statement concerning the complainant's title was communicated to a prospective purchaser in October 1949. We think that this contention is untenable. This Court in the Forman

case said: "Citation from neither judicial decision nor lexicon is needed to support the view that a cause of action 'accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested."

According to the allegations of complainant's bill, the wrongful acts complained of were committed by the defendants when the defendants executed and filed for record the mineral deeds hereinabove mentioned. The execution and filing for record of the mineral deeds purporting to convey title to an undivided one-half interest in the minerals on complainant's land was in effect an assertion of claim of ownership by the defendants of an undivided one-half interest in said minerals and a denial of the complainant's ownership of such interest. The assertion by the defendants of such interest in the manner alleged, if falsely and maliciously made, constituted a disparagement of the complainant's title. That is the tort which gave rise to complainant's cause of action for damages for slander of title and the complainant's right to sue therefor accrued at the time of the execution and filing for record of said mineral deeds. The full measure of damages that might ultimately result from the defendants' wrongful acts may not have been immediately foreseeable, but complainant's cause of action accrued when the instruments were filed for public record, and the statute of limitations began to run at that time.

The chancellor committed no error in sustaining the special demurrer No. 2 as to that part of the bill of complaint which sought to recover monetary damages on account of the execution and recordation of the mineral deeds complained of. The decree of the chancellor sustaining the demurrer is therefore affirmed, and since the appeal was granted to settle the principle of law involved in the chancellor's ruling on the special demurrer, the cause is remanded for such further proceedings as may be proper.

Affirmed and remanded.