This is an appeal from a summary judgment in favor of Central Bank of Birmingham in a case wherein Central Bank pleaded the statute of limitations with regard to this slander of title action filed by the plaintiffs, Fred and Geneva Hosey.
Most of the facts are undisputed. In 1981, Central Bank obtained a judgment against the plaintiffs' son, Fred W. Hosey, Jr. In an attempt to collect this judgment, Central Bank's attorney, James S. Oster, learned of certain real property in Blount County owned by a "Fred Hosey." The sheriff of Blount County was notified and, after notice was given by publication in the Southern Democrat, a Blount County newspaper, on March 31, 1982, April 7, 1982, and April 14, 1982, the property was sold; the bank purportedly purchased the interest of Fred Hosey, Jr., in the property for the amount of the debt. A sheriff's deed was executed and filed for record with the Blount County Probate Office on May 14, 1982.
Subsequently, in August 1982, Fred Hosey, Sr., wrote a letter to Mr. Oster pointing out that his son had had no interest in the property. It is not disputed that Fred Hosey, Jr., had had no interest in the property and that it in fact belonged to Fred Hosey, Sr., and his wife Geneva Hosey. In April 1984, Dennis Abbott, the attorney for Fred Hosey, Sr., wrote a letter to Denaburg, Shoel, Myerson and Ogle, the law firm representing Central Bank, and informed them that "Central Bank is now assessing Mr. Hosey's property for taxes." He further requested that the law firm take steps "to remedy the problems caused by [its] wrongful attachment, abuse of process, negligence and slander of title in regard to Fred W. Hosey, Sr.'s property located in Blount County." According to the affidavit of Mr. Myerson (an attorney with the Denaburg firm), following this letter from Mr. Abbot, Myerson prepared a quitclaim deed conveying all of the bank's interest in the property to Mr. Fred Hosey, Sr. Myerson claimed that the fully executed original was sent to Mr. Abbott on May 8, 1984. This is the only point that *Page 844 
seems to be in conflict, as the plaintiffs make no reference in their brief to a quitclaim deed. Both parties agree that no quitclaim deed had been recorded to remove the cloud on the property as of August 1986.
While there appears to be a factual dispute with regard to whether the bank prepared and delivered a quitclaim deed, the only issue before this Court is whether the statute of limitations had run prior to the filing of this action for slander of title. While we have never determined what the statute of limitations is for an action for slander of title, we find that "[t]he view generally adopted in the jurisdictions in which the question has arisen is that in the absence of a statute expressly made applicable to such actions, the statute of limitations governing actions for libel and slander is applicable to actions for slander of title." 50 Am.Jur.2dLibel and Slander § 553 (1970). For example, inOld Plantation Corp. v. Maule Industries, Inc.,68 So.2d 180, 182 (Fla. 1953), the Supreme Court of Florida wrote, "While there is authority to the contrary . . ., we conclude that the great weight of authority in this Country is that the Statute of Limitations applicable to libel and slander is equally applicable to actions for slander of title." In Alabama, the statute of limitations for libel and slander is two years. § 6-2-38(k), Code of Alabama (1975). We adopt the general rule and, pursuant to that rule, hold that the statute of limitations for slander of title is two years, as presently provided by § 6-2-38(k).
The sole remaining issue in this appeal is when the statute of limitations began to run. The defendants argue that it began to run upon the filing or recording of the allegedly malicious matter that resulted in this action. Thus, they argue that the statute began to run on May 14, 1982, the date the sheriff's deed was recorded, and, therefore, expired on May 14, 1984, two years later.[1] Suit in this case was not filed until January 22, 1986, three years and eight months after the recording of the deed. In support of their argument, they cite OldPlantation Corp, supra, which stated:
 "There is another proposition presented by appellant which arises out of the principal question. It relates to the date of the accrual of the cause of action. Appellant contends it is a continuing action which continues from day to day until the defendant's claim to the property is dissolved. We find no merit to this contention. The cause of action accrued when the wrongful acts alleged in the complaint were committed."
68 So.2d at 183. Defendants further cite Walley v.Hunt, 212 Miss. 294, 54 So.2d 393 (1951):
 The execution and filing for record of the mineral deeds purporting to convey title to an undivided one-half interest in the minerals on complainant's land was in effect an assertion of claim of ownership by the defendants of an undivided one-half interest in said minerals and a denial of the complainant's ownership of such interest. The assertion by the defendants of such interest in the manner alleged, if falsely and maliciously made, constituted a disparagement of the complainant's title. That is the tort which gave rise to complainant's cause of action for damages for slander of title and the complainant's right to sue therefor accrued at the time of the execution and filing of record of said mineral deeds. The full measure of damages that might ultimately result from the defendants' wrongful acts may not have been immediately foreseeable, but complainant's cause of action accrued when the instruments were filed for public record, and the statute of limitations began to run at that time. *Page 845 
212 Miss. at 309, 54 So.2d at 398 (emphasis added).
We agree with the Walley holding, despite the fact that there is authority to the contrary. See Green v.Chamberlain, 60 So.2d 120 (La.Ct.App. 1952) (where a recorded lease was held to be a continuing cause of action for slander of title as long as the lease remained of record);New England Oil Pipe Line Co. v. Rogers,154 Okla. 285, 7 P.2d 638 (1931) (where the statute of limitations for slander of title regarding a continued claim on the property in question was held not to begin to run until the defendant's claim ceased). See also Chesebro v. Powers, 78 Mich. 472,44 N.W. 290 (1889).
We agree that the full measure of damages was unknown to the Hoseys on May 14, 1982, when the deed was recorded. However, there was a cloud created on their title, which they claim lowered the value of their property and rendered it unmarketable. This situation is not changed by the fact that no specific sale of the property was lost. Therefore, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] While the parties have argued this case in terms of when the two-year statute would have begun to run, we note that prior to January 9, 1985, actions for libel and slander had only a one-year statute of limitations. See § 6-2-39, Code 1975, repealed by Act 85-39, Alabama Acts 1984-85.
Therefore, this particular case was subject to theone-year statute. The cause of action was not revived by the later extension of the statute of limitations; see § 95, Alabama Constitution, 1901.