# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01069-COA

**CATHY DORIS L. GRANTHAM**　　　　　　　　　　　**APPELLANT**

**v.**

**OLD LIBERTY CEMETERY ASSOCIATION**　　　　　　　**APPELLEE**

DATE OF JUDGMENT:　　　　　　　　01/05/2015
TRIAL JUDGE:　　　　　　　　　　HON. EDWARD C. FENWICK
COURT FROM WHICH APPEALED:　　CARROLL COUNTY CHANCERY COURT,
　　　　　　　　　　　　　　　　FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:　　　　JAMES H. POWELL III
ATTORNEYS FOR APPELLEE:　　　　JONATHAN RYAN TAYLOR
　　　　　　　　　　　　　　　　ALAN D. LANCASTER
NATURE OF THE CASE:　　　　　　CIVIL - REAL PROPERTY
TRIAL COURT DISPOSITION:　　　GRANTED APPELLEE AN EASEMENT
　　　　　　　　　　　　　　　　AND DENIED BOTH PARTIES' CLAIMS
　　　　　　　　　　　　　　　　FOR SLANDER OF TITLE
DISPOSITION:　　　　　　　　　　AFFIRMED: 02/21/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.　Cathy Grantham and the Old Liberty Cemetery Association (Association) sued each other over the title status of 1.55 acres constituting the Old Liberty Cemetery (Cemetery). The two cases were consolidated. After a three-day trial, the chancellor entered a detailed final judgment. Grantham appeals, arguing that: (1) the chancellor erroneously failed to award her a prescriptive easement over the road running adjacent to the southern boundary line of the Cemetery; and (2) the chancellor erroneously failed to find that the actions of Grantham's sister, as an agent for the Association, rose to the level of malice necessary to

support her counterclaim for slander of title. We find the decision to be within the chancellor's discretion and therefore affirm.

## FACTS

¶2.    In the words of the chancellor:

> What at first blush appears to be a bitter family dispute between two . . . sisters has mushroomed into a community-wide dispute, because the land in issue is an old church cemetery that has been in existence for over 160 years. The land has little intrinsic value; however, it is sacred ground to the Lott family as well as to the many family and community members that have family and friends buried in the cemetery. The land on which the [C]emetery is located was patented out of the government to Aaron Lott in 1840.

¶3.    There were deeds and transfers of grave sites on a portion of Aaron Lott's land over a period of more than 140 years. The Cemetery established itself by such use and by the erection of fences around it. In 1854 Aaron Lott and his wife, Martha, had deeded to the "Committee of Arrangements" of the Old Liberty Church two acres for the church building and the Cemetery near the building, both of which were in existence at that time. Ultimately, three sisters – Rita Deloach, Linda Douglas, and Cathy Grantham – and their father, Johnnie Lott, all descendants of Aaron Lott, became record title owners of that portion of Aaron Lott's property surrounding the Cemetery. In October 1981, the daughters quitclaimed their interests to their father, excepting two acres, undescribed any further, for the Cemetery. In 1994 Johnnie conveyed his interest, subject to a life estate in himself, to his daughter, Cathy Grantham, "less and except 2 acres, more or less, comprising the [C]emetery."

¶4.    Johnnie died in 2011. Two years later, Grantham filed an instrument claiming she

2

controlled access to the Cemetery. On March 3, 2013, the Liberty Cemetery Committee (Committee), on behalf of Liberty Baptist Church, met to deal with the Cemetery and its surrounding area. Liberty Baptist Church had long since removed from the property around the Cemetery, there having been only two or three burials there in the preceding sixty to seventy years. The Committee voted to "quit deed" the Lott property, less and except the Cemetery, "to the Lott family." On June 7, 2013, the Association was formally established and a charter and bylaws enacted, with its purpose enunciated as "permanent maintenance of the Liberty Baptist Church Cemetery." The deed contemplated was executed and filed, with the church deacons conveying the Cemetery to named trustees and/or their successors to act on behalf of the Association, and a plat of the 1.55 acres constituting the Cemetery, which was prepared by Joe Sutherland, was attached. One of the sisters, Rita Deloach, participated in the process.

¶5. Grantham then began locking the gate to the Cemetery. When her attempts to deny access to the grounds failed (locks were cut off the gate seven times), her husband removed the culvert from the road ditch and pushed dirt and gravel in front of the gate.

¶6. In their suit, the Granthams[1] alleged that the 1.55 acres claimed by the Association should actually only be the 1.25 acres of actual Cemetery grounds enclosed by a longstanding fence. Just a few months before the Association's deed was filed, Grantham filed an "Instrument to Clarify Description and Location of the Lott Cemetery in Carroll County,

---

[1] Howard Grantham was later dismissed as a party.

3

Mississippi and Providing for Reasonable Access Thereto" to which a survey, performed by Sutherland, who had also performed a survey for the Association, was attached. The chancellor discussed both surveys in his opinion:

> [Grantham's insistence that Sutherland's survey] represents the correct description actually varies substantially from the existing fence lines and skews across the southeast corner of the [C]emetery so as to give her ownership of the gated entrance to the property as well a substantial portion of the [C]emetery. [Sutherland] acknowledged that this line was drawn by him at the request of the Granthams and did not reflect any boundaries or monuments he found on the ground. A second survey, also drawn by [Sutherland] was done at the request of the . . . Association. This survey shows the [C]emetery completely enclosed by the old fence, but includes a strip of land on the eastern boundary lying outside the fence between the fence and the public road right-of-way. There was no dispute that Cathy Grantham owned record title to all of the contiguous land surrounding the [C]emetery.

¶7.    The chancellor further stated that Grantham "claimed in the document the absolute, exclusive right to deny or grant access to the [C]emetery at her discretion," also finding that the Cemetery gate was about five feet from the public right-of-way.

¶8.    At the close of trial, the chancellor found that the Association's predecessor in title (Liberty Baptist Church) met the statutory requirements for adverse possession of the contested property and granted the Association a prescriptive easement over the entrance to the Cemetery from the public road. The chancellor also confirmed that the strip of land between the fence and the public road lying east of Cemetery belonged to Grantham. Finally, he dismissed both parties' claims for slander of title.

¶9.    Grantham filed a motion for a new trial or, in the alternative, to alter or amend the judgment. She requested, for the first time, that she be granted a prescriptive easement and

4

restated that the church, through her sister, slandered her title. After a hearing, Grantham's motion was denied. She appeals.

## STANDARD OF REVIEW

¶10. A chancellor's factual findings will not be reversed unless they are manifestly wrong or clearly erroneous. However, a chancellor's legal conclusions are reviewed de novo. *Paw Paw Island Land Co. v. Issaquena & Warren Ctys. Land Co.*, 51 So. 3d 916, 923 (¶26) (Miss. 2010).

## DISCUSSION

### 1. Prescriptive Easement

¶11. Grantham first argues she was entitled to a prescriptive easement across the Association's property. "The evidentiary burden to establish a prescriptive easement is high." *King v. Gale*, 166 So. 3d 589, 593 (¶20) (Miss. Ct. App. 2015). Grantham had to show by clear and convincing evidence she used the Cemetery tract to get to her property. *Id*. *See Thornhill v. Caroline Hunt Tr. Estate*, 594 So. 2d 1150, 1152 (Miss. 1992). Further, she had to prove her use was "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Id*. (citations omitted). We note that she did not assert any claim for an "easement of necessity" because she has significant access to a public roadway, and makes claim for a "non-exclusive" prescriptive easement, even though exclusivity is a required element of a prescriptive easement.

5

¶12.    The chancellor notes pointedly that Grantham denied any claim to the Cemetery land itself, only asserting the location of boundaries and easements to it and arguing that the Cemetery occupied 1.25 of the 1.55 acres the Association claimed.  And there was no evidence presented that Johnnie, from whom she derived her title, ever claimed any ownership of the Cemetery.  In her appellate brief, she restates that she "has decided not to appeal the determination . . . that the fence lying south [of] the access road is the cemetery's south boundary, but does appeal the denial of her 'non-exclusive easement' over the road to access her property."  Grantham had stated her father always fenced his property, and that the northern boundary of the property she inherited is also the southern boundary of the Cemetery.  She also testified that he had a concrete pad poured to feed his cows and admitted that the concrete pad stopped just south of the fence in the very southeast corner of the fenced-in area of the disputed property.  Occasionally, Johnnie let the cows out through the Cemetery gate.  Prior to her father's death, Grantham returned to the property once or twice a month and had little knowledge of what was going on while she was away.

¶13.    A "prescriptive easement," as noted above,  is an easement obtained by adverse possession over another's land.  Like any other adverse possession claim, an owner's permission to use the easement defeats a party's claim. *See Kendall v. May*, 199 So. 3d 697, 700 (¶8) (Miss. Ct. App. 2016).  The general public (or at the very least the descendants of those buried in the Cemetery) had entered the Cemetery without interference and with implied permission of the church for more than a century  – until Grantham locked it and

6

removed the culvert. Anyone who had ancestors buried in the Cemetery had the right to enter onto "family cemetery" property and visit an ancestor's grave as well as to be buried in the Cemetery. Grantham, a direct descendant of Aaron Lott, specifically has such a right, with the same permission as any other descendant of an ancestor buried in the Cemetery, to drive across roads crossing Cemetery property. She has presented no evidence of any open, notorious, or exclusive occupancy of any portion of the Cemetery property for more than ten years, as determined by the chancellor. Consequently, she is entitled to no greater or lesser interest in an easement over parts of the Cemetery than any descendent of anyone buried there.

### 2. Slander of Title

¶14. Grantham next claims the Association slandered her title.

> To succeed in an action for slander of title, a claimant must show that another has falsely and maliciously published statements that disparage or bring into question that claimant's right of title to the property, thereby causing special damage to the claimant. The slander may consist of a writing, a printing, or words of mouth, but they will provide grounds for a cause of action only if the statements have been made falsely and maliciously. Whatever the statement, however, in order for it to form the basis of a right of action, it must have been made not only falsely but maliciously.

*Mize v. Westbrook Constr. Co.*, 146 So. 3d 344, 348 (¶7) (Miss. 2014) (internal citation omitted) (citing *Walley v. Hunt*, 212 Miss. 292, 304, 54 So. 2d 393, 396 (1951)).

¶15. The chancellor found that none of the actions taken by the Association or Liberty Baptist Church (or for that matter, actions by Grantham) were adequate to support a finding that the elements of a slander of title action were met. He observed that the Granthams and

7

the Association used the same surveyor, and both requested that Sutherland plat the property in such a way as to embody their separate claims. He found the submission of their similar plats indicative of the desire and intent of both sides to obtain court approval of boundary claims not clear in the land deed records and not to intentionally, falsely, and maliciously publish claims of boundaries totally unsupported by any evidence. We find substantial evidence in the record allowing the chancellor's ruling.

## CONCLUSION

¶16. In a concise and thorough opinion, the chancellor determined facts, set out conclusions of law, and made a final ruling well within his discretion and without doubt neither manifestly wrong nor clearly erroneous. Thus, we affirm.

¶17. **THE JUDGMENT OF THE CARROLL COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**