## SELLARS v. GRANT.
### No. 13575.

United States Court of Appeals
Fifth Circuit.
May 8, 1952.

---

678

Joseph H. Howie, Jackson, Miss., for appellant.

Barron C. Ricketts, Jackson, Miss., for appellee.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal in an action brought by appellee, T. A. Grant, against the appellant, R. T. Sellars, in the United States District Court for the Southern District of Mississippi. The court below entered a judgment in favor of Grant and against Sellars cancelling an assignment of lease from Sellars to Grant conveying a leasehold interest in certain lands located in Section 4, Township 12, Range 2 East;[1] declaring the title to all leasehold interests purported to have been conveyed under said instrument to be the sole property of Sellars to the same extent as if said assignment had never been executed and recorded; giving judgment to Grant against Sellars in the amount of $7,800 with interest; decreeing that Grant had no right, title, and interest in certain lands located in Section 11;[2] and dismissing a counterclaim filed by Sellars wherein he sought to recover damages on the ground that Grant had slandered his title to the lands located in Section 11.

The material facts are as follows: On the morning of February 7, 1950, Sellars, who was then in Jackson, Mississippi, had occasion to talk by long-distance telephone with Mr. R. D. Hopkins in Monroe, Louisiana. In the course of the conversation Sellars told Hopkins that he had a hot deal pending for the purchase of an oil and gas lease in the Pickens Field in Mississippi, but he could not handle it by himself and wanted to know if Hopkins could find someone to go in on the purchase with him. In response to Hopkins' request for details, Sellars stated that the transaction involved the purchase of a full seven-eigths commercial oil and gas lease on a 240 acre tract of land

1. The lands may be more particularly described as the east one-half of the northwest quarter and the northeast quarter of the southwest quarter of Section 4, Township 12, Range 2 East, located in Yazoo County, Mississippi.

2. These lands may be described as the northeast quarter and east half of the northwest quarter and the northwest quarter of the southeast quarter of Section 11, Township 12, Range 2 East, located in Yazoo County, Mississippi.

located within a mile and a half or two miles of the Carter discovery well for the price of $15,600.00; that he could handle one half of the purchase price; and that the person assuming the other $7,800 would receive an undivided one half interest in the entire leasehold on 240 acres. He further stated that quick action was necessary as the deal would have to be consummated by 2:00 P. M. of that day. Hopkins passed this information on to the appellee, T. A. Grant, and in a subsequent telephone conversation Hopkins informed Sellars that he had found a person who was willing to participate in the transaction on the basis which he had mentioned. The necessary financial arrangements were then made and before the two o'clock deadline Sellars drew a draft on Grant in the amount of $7,800, which was paid. One week later, on February 14, 1950, Sellars executed an assignment to Grant of an oil and gas lease on 120 acres of land located in Section 4, Township 12 North, Range 2 East, in Yazoo County, Mississippi, and the instrument was filed for record. However, this assignment was not tendered to Grant nor accepted by him prior to its recordation. On February 18, 1950, Grant, Hopkins, and Sellars met in a hotel room in Monroe, Louisiana, and Sellars attempted to deliver to Grant a copy of the assignment but Grant noted from the map of the Pickens oil field, which was shown to him at that time, that the land described in the instrument was not located within a mile and a half or two miles of the Carter discovery well, as represented to him at the time he agreed to buy, but was located about four or five miles therefrom. Accordingly, Grant refused to accept the assignment, informing Sellars that it was not what he had bargained for.

The court below found that there was no meeting of the minds between Sellars and Grant as to the property which Grant was to acquire and, therefore, no contract was entered into between the parties. Insisting that the trial court erred in so finding, appellant argues that at most there was but a unilateral mistake as to the property which Grant was to receive and, besides, Grant could by the exercise of reasonable diligence have ascertained the real facts and there was no confidence reposed. This argument is not persuasive.

■ Grant believed he was bargaining for a mineral lease on lands located within a mile and a half or two miles from the Carter discovery well. Considering the purpose which Grant had in mind in acquiring the lease, the proximity of the property to the discovery well was obviously a material fact. If the appellee's version of the transaction is to be believed, and it was credited by the trial judge who had an opportunity to hear the evidence and observe the demeanor of the witnesses, the mistake was induced by Sellars and it was induced in order that it might be acted upon. This, of course, gave Grant a right to rescind the transaction. 4 Williston on Contracts, § 1487. And this is true even though the party making the misrepresentation did so innocently. See 4 Williston on Contracts, § 1500. The rule is bottomed on the sound reasoning that it would be unjust to allow one who has made material false representations, however innocently, to retain the fruits of a bargain induced thereby. Duncan v. Hogue, 24 Miss. 671; 23 Am.Jur. 819.

■ Nor are we impressed with appellant's argument that Hopkins was Grant's agent and, consequently, was bound by his acts. Undoubtedly a principal is bound by the authorized acts of his agent but here the evidence is in conflict as to whether Hopkins faithfully relayed to Grant the information given to him by Sellars and the court credited Hopkins' version of the telephone conversation. Moreover, it seems to us that Hopkins was no more the agent of Grant than he was the agent of Sellars. We think he was merely a person known to both parties by whom Sellars' offer was transmitted to Grant and Grant's acceptance was relayed back to Sellars.

The next point raised is that the court refused to grant judgment for appellant on his counterclaim for damages suffered by reason of the alleged slander of apellant's title to the lands located in Section 11. The trial court found that following Grant's refusal to accept the assignment of the

mineral lease on the 120 acres of land located in Section 4, he employed a reputable attorney to investigate his transaction with Sellars. A search of the public records with respect to all leasing transactions in which Sellars had been involved, disclosed an assignment of an oil and gas lease executed by A. E. McNatt to Sellars, which was dated and acknowledged February 7, 1950. This assignment transferred to Sellars an oil and gas lease on 200 acres of land located in Section 11, which was considerably closer to the Carter discovery well than the land located in Section 4. Having this transaction in mind, as well as the fact that Sellars told Hopkins on February 7, that he was offering an opportunity to acquire an interest in an oil and gas lease which was then the subject of pending but incomplete negotiations, and that his search of the public records had disclosed that the oil and gas lease on the 240 acres of land located in Section 4 was dated February 3, and acknowledged the same day, Grant's attorney concluded that on February 7th Sellars had purchased the oil and gas lease on 200 acres in Section 11 with Grant's money; and that, therefore, Sellars held the property as trustee for the benefit of Grant. Accordingly, Grant's attorney filed this action against Sellars, seeking for the use and benefit of Grant to establish a trust *ex maleficio* on the lands located in Section 11. Concurrently with the filing of the complaint in the district court, a *lis pendens* notice as to the lands located in Section 11 was filed in the office of the Chancery Clerk of Yazoo County, Mississippi. The court below found that Grant was not entitled to acquire any interest in the lands located in Section 11 but concluded that the suit was filed in good faith; that it was not actuated by malice; and that in keeping the *lis pendens* notice upon the records, Grant and his attorney were acting in the exercise of reasonable care and sound judgment.

Appellant concedes that Grant's original assertion of title may have been in good faith but argues that after Grant was advised by the appellant and his attorney as to the true facts and thereafter continued in his refusal to remove the *lis pendens* of record, it may not thereafter be said that the keeping of the *lis pendens* notice upon the records was in good faith. The trial court found that the facts in the case were so close that nothing short of sworn testimony, under cross examination, would suffice to determine the truth of the matter; and that a litigant, while acting in good faith, is entitled to have his law suit adjudicated upon sworn testimony. We agree. Certain it is that a litigant is not under a duty to accept as true the version of the facts of a case presented to him by the opposition. To hold otherwise would deprive him of the right to have the facts presented to and determined by a court on the basis of witnesses testifying under oath and subject to cross examination. In any event, we think the trial judge did not err in finding that Grant was not actuated by malice in keeping the *lis pendens* notice of record.

The judgment was right and it is affirmed.