495 So.2d 16 (1986)
Huey Ray WISE, et ux.
v.
Harold SCOTT, et ux., et al.
No. 56,441.
Supreme Court of Mississippi.
September 24, 1986.
*17 Delos H. Burks, Stewart, Burks, Pace & Carroll, Picayune, for appellants.
Nicholas M. Haas, Bay St. Louis, for appellees.
Before HAWKINS, P.J., and DAN M. LEE and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
This is an appeal from the Chancery Court of Pearl River County, wherein plaintiff Scott and others successfully brought an action to confirm their respective titles to an undivided one-half mineral interest in them as to their respective tracts of land acquired from and through Wise. One plaintiff, Jimmy Mathis, confirmed title to a one-quarter mineral interest. The plaintiffs were also successful in voiding "Corrected Warranty Deeds" executed by Wise as clouds upon their titles. Additionally, plaintiffs collected legal fees for slander of title. We affirm the lower court in holding the "Corrected Warranty Deeds" were void, but we reverse the award for slander of title and reform one deed for mutual mistake.

*18 FACTS
On February 22, 1963, Huey Ray Wise (Wise) acquired 192 acres of property situated in Pearl River County from Billy Boles Land Investments, Inc. The conveyance was made subject to a prior reservation of a one-half mineral interest. In the mid-1970s Wise began subdividing the land, and had a surveyor draw up legal descriptions. Thirteen or fourteen deeds for these tracts were drawn up in 1976 by Wise's attorney, Jack Stewart, which contained the following language:
The grantors herein reserve unto themselves one-half of all oil, gas and other minerals, in, and under the above described property.
This litigation concerns eight parcels of the Wise land which were sold and conveyed to Harold Scott, Robert Bartz, R.V. Mathis and Jimmy Mathis (hereinafter plaintiffs). Seven of these tracts were originally sold before 1978 and contained the language above. In some instances the sales were directly from Wise to the named present owners and in some instances there were intervening owners between Wise and the named present owner. In the cases of such intervening owners, the present owners stipulated that they stood in the position of their predecessors in title for all purposes and abandoned all other claims.
In early 1978 erroneous legal descriptions were found in each subdivided parcel. To remedy this, Wise employed M.D. Tate, an attorney and engineer, to prepare correction deeds for those parcels previously sold. The corrected warranty deeds were sent to all grantees, including the plaintiffs, except for Jimmy Mathis, along with a cover letter explaining that the deed was to correct the erroneous legal description. After the description was corrected, the following language was included:

Subject to any and all prior reservations or conveyances of oil, gas, or other minerals, as shown of record; further, grantors reserve unto themselves one-half of all remaining oil, gas, and other minerals. [Emphasis added]
In July of 1978 Jimmy Mathis bought his tract of land from Wise subject to this language.
Around 1981 a second correction warranty deed was prepared by M.D. Tate and sent to all grantees including plaintiffs here. The attached cover letter stated that "this instrument is given for the purpose of correcting an erroneous mineral reservation ..." The second correction deed contained virtually the same language as the first correction deed, but stated, "Grantors reserve unto themselves all remaining oil, gas, and other minerals." [Emphasis added]
Soon thereafter the plaintiffs brought an action against Wise and his wife praying to void Wise's mineral interests and seeking damages for slander of title. Wise filed counterclaims to reform the deeds, and the four cases were consolidated for trial. The chancellor found the correction deeds were null and void and as such were cancelled. The chancellor found sufficient evidence to infer malice on the part of Wise, and awarded attorney's fees of $3,600.00.

LAW

I.

DID THE LOWER COURT ERR IN VOIDING WISE'S RESERVATION OF MINERAL RIGHTS?
This case is controlled by Salmen Brick & Lumber Co. v. Williams, 210 Miss. 560, 50 So.2d 130 (1951). The rule of Salmen Brick states that when a grantor owns one-half of the minerals and subsequently conveys the property by warranty deed using an identical exception clause, the effect of the second deed is to convey to the grantee the mineral interests owned by the grantor. In adopting this rule, Mississippi has been in accord with the general rule as announced in Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878 (1940); 1 Williams & Meyers, Oil & Gas Law, § 311 (1978); see generally 51 Miss. L.J. 515, 516 (1980-81) (Salmen Brick consistently upheld by this Court).
*19 Wise obtained his land in 1963, owning a one-half mineral interest. When he conveyed by warranty deed these parcels of land in 1976, he reserved one-half the minerals. The deed contained no language about Wise's predecessor in interest. Therefore, under the rule of Salmen Brick, Wise's warranty obligation to convey half the minerals was superior to his reservation rights. The chancellor correctly ruled that the mineral interest belonged to the plaintiffs/grantees.

II.

DID THE LOWER COURT ERR IN FAILING TO REFORM WISE'S CORRECTION DEEDS ON THE GROUNDS OF MUTUAL MISTAKE?
In this assignment of error Wise asserts that since all parties knew of his intention, then the deed should be reformed by virtue of mutual mistake. The general rule regarding mutual mistake in the reformation of a deed was stated by this Court in Perrien v. Mapp, 374 So.2d 794, 796 (Miss. 1979):
The general rule is that a mutual mistake must be a mistake on the part of both parties or a mistake on the part of one party with fraud or inequitable conduct on the part of the other party. Johnson v. Consolidated American Life Insurance Co., 244 So.2d 400 (Miss. 1971). The burden of proof is upon the party trying to establish mutual mistake and the proof must establish such mistake beyond a reasonable doubt. Turner v. Turner, 241 Miss. 444, 130 So.2d 871 (1961). See also Wall v. Wall, 177 Miss. 743, 171 So. 675 (1937).
In the instant case, plaintiffs Scott, Jimmy Mathis and R.V. Mathis testified that Wise never mentioned mineral rights to them. Because of this, Wise has failed to meet his burden of proof for mutual mistake regarding these plaintiffs. One plaintiff, however, Robert Bartz, had no contact with Wise, and it appears that Wise met his burden with respect to that plaintiff.
In Webb v. Brown, 404 So.2d 1029 (Miss. 1981), the grantor conveyed to the grantee, who subsequently conveyed to the defendant. In an action to reform the warranty deed because of mutual mistake concerning the amount of property conveyed, this Court stated:
... We are of the opinion the evidence unmistakenly demonstrates that it was the clear intention of the original grantor, Mrs. Annie K. Varnado, not to convey the Ainsworth Building. Neither did the original grantees, Peggy Wiggins and Durwood McGuffie, intend to purchase the property in dispute nor did McGuffie intend to subsequently convey it to Elizabeth Brown. Even though the deed description after survey included part of the Ainsworth Building, it is not the description they intended to write which controls, but the property the parties intended to include in the description used... . Moreover, we are of the opinion the evidence demonstrates beyond a reasonable doubt a mutual mistake on the part of the original grantor and grantees. [Emphasis added]
Id. at 1031-32.
In the case at bar, Bartz owned three parcels of land, one of which was acquired from Mr. Wellon Mitchell. Mitchell testified at trial that he purchased the 15 acres from Wise and they agreed that Wise would hold all mineral rights. He further testified that he knew he was not getting any minerals. When Mitchell sold the 15 acres to Mr. Cooter (who subsequently sold to Bartz), the warranty deed stated, "This conveyance is made subject to prior reservation of oil, gas and other minerals, as shown of record."
Under the rule of Webb v. Brown, the original grantor (Wise) and the original grantee (Mitchell) both testified that no minerals were to be conveyed; therefore, the deed for the 15-acre parcel owned by Bartz as a subsequent purchaser should be reformed. We need not consider whether or not Bartz was a bona fide purchaser because, as a plaintiff in this action, he agreed to stand in the position of his predecessor *20 in title. Accordingly, we find that Wise has met his burden of proof for mutual mistake regarding one of the eight parcels of land, the 15-acre tract owned by Bartz.

III.

DID THE LOWER COURT ERR IN ALLOWING ATTORNEY'S FEES FOR SLANDER OF TITLE?
In the court below, the chancellor stated that there was sufficient evidence to infer malice by Wise in toto and found Wise guilty of slander of title. In a supplemental memorandum, the chancellor found that since the plaintiffs had offered to place evidence before the court with respect to plaintiffs' reasonable attorney's fees, or that, alternatively, the court could set reasonable attorney's fees, then this prayer by the plaintiffs would be sufficient to allow damages for slander of title.
The chancellor was justified in allowing attorney's fees to substitute for specific damages. See Phelps v. Clinkscales, 247 So.2d 819 (Miss. 1971) (chancellor allowed reasonable attorney's fee as compensable for slander of title). Phelps is also good authority that the chancellor is authorized to infer malice. Id. at 821. However, it is the opinion of this Court that the evidence of malice in the instant case does not rise to the level of other slander of title cases in Mississippi.
The seminal Mississippi case regarding slander of title is Walley v. Hunt, 212 Miss. 294, 54 So.2d 393 (1951). In Walley this Court recognized that the malicious filing for record of an instrument which is known to be inoperative, and which disparages the title to land, is a false and malicious statement for which damages may be recovered. We further stated that "whatever be the statement, however, in order for it to form the basis for a right of action it must have been made, not only falsely, but maliciously." Id. at 305, 54 So.2d at 396. This Court defined malice regarding slander of title in Phelps v. Clinkscale, supra, in stating:
Malice exists in the mind and usually is not susceptible of direct proof. The law determines malice by external standards; a process of drawing inferences by applying common knowledge and human experience to a person's statements, acts, and the surrounding circumstances.
247 So.2d at 821.
In Phelps, the Court took notice of a long history of litigation between the two parties, and stated that the execution of a quitclaim deed and placing it on record was obviously done to disparage and cloud the title.
In Perrien v. Mapp, 374 So.2d 794 (Miss. 1979), the purchaser of property sued the vendor to remove the cloud on title and for slander of title. The Court held that since the claim of the vendor was "a result of a bona fide belief that they were entitled to the disputed property", there was no malice and therefore no damages were allowed. Id. at 798.
The Perrien case resembles the instant case in that the vendors discovered that a mistake had been made in the amount of property conveyed, and the vendors claimed they did not intend to convey the same. The vendors wrote the purchaser, and informed him that a mistake had been made in the deed and that their attorney would forward a correction deed to them to be signed. The purchaser refused to sign the instrument and the resulting litigation ensued.
This case indicates a claim which arose out of a bona fide dispute, and not one of aggravation or malice. Wise testified that he intended to reserve one-half mineral interest in each parcel of land. His testimony was bolstered by one of his original grantees, Wellon Mitchell, and his attorney, Jack Stewart, who drew up the deed. Mr. Stewart failed to do a title search and as a result unwittingly conveyed *21 away Wise's mineral interests under the rule of Salmen Brick. When the first correction deed was sent out to correct the legal description of the property, Wise had a different attorney draw up the correction deeds. He informed M.D. Tate that he had reserved a one-half mineral interest before, and he wanted to reserve the same mineral interest. When Wise discovered that there was an error in the mineral reservation, he had M.D. Tate draw up a second correction deed. A cover letter was included asking each grantee to sign the deed. Wise testified that nine parties returned the minerals to him.
In contrast, the plaintiffs put on no evidence of a malicious intent by Wise. In their case in chief, all deeds and documents were admitted into evidence, after which the plaintiffs rested. The only conclusion to be drawn from this is that the mere filing of a correction deed is sufficient to show malicious intent on the part of Wise. We can hardly accept this outcome.
The only evidence of a malicious intent by Wise was the plaintiffs' conflicting testimony that Wise said nothing about mineral rights. We hold that Wise's claim was the product of a bona fide belief that he was entitled to the mineral interests, and did not arise out of aggravation or malice.

CONCLUSION
Under the rule of Salmen Brick, the correction deeds should be deemed null and void, and the chancellor should be affirmed. With regard to the reformation of the warranty deeds, the chancellor's opinion that there was no mutual mistake should be affirmed, except for the 15-acre tract owned by the plaintiff Bartz. Regarding the slander of title award for damages, we find the evidence of malicious intent was not sufficient to allow for such compensation, and the chancellor's decision should be reversed.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.