# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-00610-SCT

*JERRY P. MIZE*

*v.*

*WESTBROOK CONSTRUCTION COMPANY OF OXFORD, LLC, JIMMY ALVIS LEWIS, JR., KAY W. LEWIS AND JIMMIE WALLER*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2012 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| TRIAL COURT ATTORNEYS: | BRADLEY T. GOLMAN |
| | WILLIAM TROY SLOAN |
| | BELA J. CHAIN, III |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | R. BRADLEY BEST |
| | ELBERT EARL HALEY, JR. |
| | ERIK GREGORY FARIES |
| ATTORNEYS FOR APPELLEES: | WILLIAM TROY SLOAN |
| | BELA J. CHAIN, III |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED IN PART. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS REVERSED IN PART AND THE CASE IS REMANDED - 09/04/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case arises from a property-line dispute between neighboring landowners in Lafayette County, Mississippi. Jerry Mize filed suit to confirm title to property described in a recorded corrected warranty deed. Westbrook Construction Company of Oxford, LLC, Jimmy A. Lewis, Jr., Kay W. Lewis, and Jimmie Waller, hereinafter referred to as Defendants, answered the complaint, counterclaimed to quiet and confirm their titles, and sought damages for slander of their respective titles. The chancellor found for Defendants and awarded damages and attorneys' fees on their slander-of-title claims. The Court of Appeals affirmed. In his petition for certiorari, Mize raises multiple issues. We granted certiorari to consider whether all the elements of a slander-of-title claim were met. Our review is limited to whether there was sufficient evidence to support a slander-of-title action.[1]

## FACTS AND PROCEDURAL HISTORY

¶2. Mize purchased fifty-six acres in Lafayette County. Without dispute, the vast majority of this property lies north of County Road 206. However, in reliance upon what the prior landowner (Estelle Kiger) communicated to him prior to the conveyance, Mize was led to believe that a small portion of the tract lay to the south of the road. Defendants, owners of properties south of County Road 206, claimed that their properties extended to the center line of the road, as described in their deeds.

¶3. To resolve the issue, Mize commissioned W.L. Burle Engineering of Oxford to survey his property. Jim Cannatella performed the survey. Cannatella has a B.S. in civil engineering. He maintains licenses as a professional engineer and professional surveyor in multiple states, including Mississippi. He is affiliated with multiple professional surveying and engineering

---

[1]Upon grant of certiorari, we may limit issues on review. Miss. R. App. P. 17(h).

2

associations. He has more than twenty years of experience in this field. His survey opined that Mize's property crossed County Road 206 and included a portion on the southern side of the road that was claimed by Defendants. Cannatella prepared a property description based on his findings and provided this description to Mize's attorney, who drafted a corrected deed for Mize that closed the property.[2] Subsequently, Kiger executed the corrected deed, and Mize filed the deed.

¶4. Westbrook declined to recognize Cannatella's survey and Mize's corrected deed. Westbrook relied on its warranty deed that included a property description drawn from a survey conducted in 2004 by Robert Karl Sealy, who is also a professionally licensed surveyor with more than twenty years of experience. Sealy's survey set the northern boundary of Westbrook's property as the center line of County Road 206.

¶5. Unable to resolve the boundary dispute, Mize filed an action in the Chancery Court of Lafayette County to quiet and confirm title to the property described in his Corrected Deed. Defendants answered and filed counterclaims. Their counterclaims sought to quiet and confirm their own titles and alleged that Mize had slandered their respective titles. After a two-day trial, the chancellor accepted Sealy's survey[3] and established the center line of County Road 206 as the boundary between the properties. The chancellor also found that, even if Mize's property extended slightly south of the road, Defendants had gained title

---

[2] The original deed contained a description that did not close.

[3] In his Final Decree, the chancellor stated, "The conflict in surveys rendered by Karl Sealy in November of 2004 and by Jim Cannatella in October of 2007 is resolved in favor of the Sealy survey, due to the fact that Cannatella could not find, and did not use, the appropriate monuments and Sealy did." The monument to which the judge referred was a cotton-picker spindle located at or near the northeastern corner of Mize's property.

through adverse possession.[4] Finally, the court ruled for Defendants on their slander-of-title claim, finding that Mize had acted with malice in pursuit of his claim. The court ordered Mize to pay damages, awarding $32,530.05[5] to Westbrook as compensation for interest paid on the property since the filing of the suit, and attorneys' fees in the amount of $5,687.50 to Waller and the Lewises.

## STANDARD OF REVIEW

¶6.     This Court will reverse a chancellor only if he or she commits manifest error. *Ferrara v. Walters*, 919 So. 2d 876, 880 (Miss. 2005).   The chancellor's decision must be upheld unless it is found to be contrary to the weight of evidence or is manifestly wrong. *Id*.  We will accept findings made by the chancellor regarding questions of fact and credibility of witnesses, so long as the evidence in the record tends to reflect the chancellor's findings. *Dunn v. Dunn*, 786 So. 2d 1045, 1049 (Miss. 2001).  However, this Court may overrule the chancellor if the chancellor's findings are clearly wrong or are reflective of an erroneous legal standard. *Id*.

## DISCUSSION

### I.

---

[4] Even though Westbrook had owned the property only since 2005, the court ruled that its predecessors in title made use of the property for agricultural purposes in an open and notorious manner for the statutory period, thereby satisfying adverse possession.

[5] This amount was calculated based on the amount of interest that Westbrook paid on its mortgage from the date of a scheduled sale of the property. The court determined that, but for Mize's suit, Westbrook would have sold the property and used the proceeds to pay off the mortgage.

¶7. To succeed in an action for slander of title, a claimant must show that another has *falsely* and *maliciously* published statements that disparage or bring into question the claimant's right of title to the property, thereby causing special damage to the claimant. ***Walley v. Hunt***, 212 Miss. 294, 304, 54 So. 2d 393, 396 (1951). The slander may consist of a writing, a printing, or words of mouth, but they will provide grounds for a cause of action only if the statements have been made *falsely* and *maliciously*. ***Id***. Whatever the statement, however, in order for it to form the basis of a right of action, it must have been made not only falsely but maliciously. ***Id***. (citations omitted).

¶8. Malice, however, may be inferred from one's actions. ***Phelps v. Clinkscales***, 247 So. 2d 819, 821 (Miss. 1971). "The law determines malice by external standards; a process of drawing inferences by applying common knowledge and human experience to a person's statements, acts, and the surrounding circumstances." ***Id***. As such, the chancellor's finding of malice should be given great deference and can be reversed only if it is clearly erroneous. ***Mason v. Southern Mortgage Co.***, 828 So. 2d 735, 739 (Miss. 2002). Here, the chancellor found malice in Mize's actions; however the record is silent as to whether Mize knowingly made a false publication.[6]

*A. The Corrected Deed*

---

[6] Said the chancellor in his Final Decree, "The claim of Plaintiff Jerry P. Mize to the lands South of Lafayette County Road No. 206 was made with malice, as defined and contemplated in ***Walley v. Hunt***, 212 Miss. 294, 54 So. 2d 393 (Miss. 1951), and the later reported decisions relying thereon for authority, as evidenced by the removal of the culvert from the road ditch on the South side of Lafayette County Road No. 206 during the pendency of litigation, and the maintaining of this action after it should have been apparent that neither Estelle Kiger nor her father ever claimed any land South of Lafayette County Road No. 206 and intended for said road to be a public road."

¶9.     This Court has held that the mere filing of a corrected deed is not sufficient to show malicious intent. ***Wise v. Scott***, 495 So. 2d 16, 21 (Miss. 1986). ***Wise*** involved a dispute of mineral rights between parties following a conveyance of a mineral deed. ***Id***. at 20.  After realizing that there had been a drafting error in the original deed that had a material effect on the parties' property rights, the defendant sought to correct the error through a corrected deed. ***Id***. at 21.  The plaintiffs successfully sued the defendant for slander of title in chancery court. ***Id***.  On appeal, this Court reversed the chancery court, finding that malice cannot be shown by the mere filing of a corrected deed, if the party who filed the corrected deed had a bona fide belief of ownership. ***Id***.

¶10.    Mize testified that the prior owner, Kiger, had told him that the property extended slightly south of County Road 206.  To confirm or refute this claim, Mize commissioned a survey of his property by Cannatella.  Cannatella's survey revealed that the property did extend south of County Road 206, and the property description under the original warranty deed did not close.  Cannatella then prepared a written description of the property that closed. No evidence was presented, nor does the record reflect, that Mize and Cannatella engaged in a collusive or fraudulent effort in obtaining the survey or preparing the property description.

¶11.    Next, Mize retained an attorney to draft a corrected deed using Cannatella's description that closed and assisted Mize with the filing of the corrected warranty deed after the previous owners of his property, the Kigers, executed the corrected deed.  Given Mrs. Kiger's recollection of the property and the results of the survey, Mize was entitled to rely on the Kigers' execution of the corrected warranty deed, absent any collusive or fraudulent

6

behavior between Mize and the Kigers. Just as no such evidence exists that suggests Cannatella conducted a fraudulent survey, likewise, no evidence exists that Mize obtained the Kigers' signatures through guise, chicanery, or any otherwise invidious method.

¶12. Finally, in reliance of Cannatella's survey and Kiger's prior representations and execution of a corrected deed, Mize filed the corrected deed with the assistance of his attorney. Here again, nothing in the record suggests that Mize's attorney acted improperly. No evidence was presented that implies that Mize falsely or maliciously published the corrected deed. The filing of the corrected deed, which was based on an independent professional survey and the statements of the grantors of the property, without proof of falsity, guile, or trickery, does not satisfy the elements of false publication or malice. Absent both, no slander-of-title action can succeed.

*B. The Filing of Suit*

¶13. Communications published in due course of a judicial proceeding are absolutely privileged and will not sustain an action for slander of title. ***Dethlefs v. Beau Maison Dev. Corp.***, 511 So. 2d 112, 117 (Miss. 1987) (citing ***Krebs v. McNeal***, 222 Miss. 560, 76 So. 2d 693 (Miss. 1955)). For example, the filing of a *lis pendens* notice in the due course of a judicial proceeding will not give rise to slander of title. ***Dethlefs***, 511 So. 2d at 117. ***Dethlefs*** involved a dispute over the existence of an easement and whether filing suit to determine the existence of that easement constituted slander of title. ***Id***. On appeal, this Court held that such a filing constitutes an effort to protect one's title and invokes one's right to have his or her case decided by the court. ***Id***. Said the Court, "Since Dethlefs had a valid

right to have her case decided, the filing of a *lis pendens* notice cannot be slander of title."

*Id*.

¶14.    All citizens have the constitutional right to petition our courts to adjudicate honest disputes. When Defendants rejected the findings of the Cannatella survey and the corrected deed executed by Kiger, Mize exercised his right to petition a court to confirm and quiet title to the disputed property. If an honest dispute arises as to the ownership of property, such action is akin to the same privilege accorded to the filing of a *lis pendens* notice. Like Dethlefs, Mize had a legal right to have his case decided, regardless of the claims of ownership by Westbrook or any of the other Defendants. *See Sellars v. Grant*, 196 F. 2d 677, 680 (5th Cir. 1952) (finding that parties in litigation are not required to "accept as true" their opponents' "version of the facts of a case"). Mize's claim was based on Cannatella's survey, oral statements, and the executed corrected deed by Kiger. Without doubt, these competing claims created an valid dispute. However, Mize's action in filing suit, standing alone, does not satisfy the false-publication or malice elements to support an action for slander of title. Mize had a right to pursue his bona fide belief of ownership. All concerned had a right to have the facts of the case examined by the court for a determination of ownership. *Id*. Thus, no slander-of-title action arose from the filing of the suit.

### C. Continuation of the Suit

¶15.    Malice requires a showing of evil intent or ill will toward another, either through conduct or statements, without just cause or excuse. *Black's Law Dictionary* 1109 (4th ed. 1970). The chancellor focused on two events to find that Mize had acted with malice: 1) the continuation of the suit following Estelle Kiger's testimony in her deposition that she never

8

meant to sell any of the property owned by the Lewises or Waller and 2) the removal of a culvert on the south side of County Road 206 during the course of the litigation.

¶16.    The chancellor interpreted Kiger's deposition testimony as an unequivocal denial of her prior ownership of the property in dispute.  Although she did not know the exact location of the property line, Kiger also testified that the formerly owned property extended south of County Road 206.  Kiger based her testimony on what her father had told her when she was a girl. She testified that when her father first built the road as a private road, he built it entirely within their property lines.  Kiger's execution of the corrected deed served as an affirmation of this belief.  Although the chancellor and Court of Appeals correctly found that Kiger never intended to convey to Mize any of the property owned by Waller or the Lewises, Kiger explicitly intended to convey to Mize all of the property that she believed she owned, including property south of County Road 206.  The deposition[7] simply confirmed that the property that she intended to convey was that which she thought belonged to her, and not property owned by Waller or the Lewises.

¶17.    Kiger's testimony was not an unequivocal denial of former ownership to the property in dispute. The chancellor's characterization that Mize "blindly" pursued his claim is dubious given that Mize pursued the claim on the results of the survey, the corrected deed executed by Kiger, and no direct evidence to support a finding of *mala fides* by Mize in continuing his suit. However, the chancellor's finding of malice is fairly debatable and could support an inference of malice. Thus we defer to this finding.

---

[7] Kiger's testimony by deposition was submitted into evidence without objection.

¶18. The same deference is not afforded the chancellor in ruling that the removal of the culvert was a malicious act. This Court has held that a party who commits an act under reasonable belief of title will not be said to have acted maliciously when committing the act. ***Butler v. City of Eupora***, 725 So. 2d 158, 161 (Miss. 1998). In ***Butler***, a city maintenance crew installed a water line on property that was authorized by a digging permit from Mississippi Department of Transportation (MDOT), even though MDOT's title had not officially vested at the time the installation commenced. *Id*. at 159. Butler, who was the vested owner at the time of installation, filed suit for slander of title, among other claims. *Id*. The chancellor denied recovery to Butler, and we affirmed. We found such damages were not appropriate for the plaintiff's claim of slander of title because the city acted with reasonable reliance on the authorized digging permit and not out of malice. *Id*. at 161.

¶19. Mize testified that the culvert had become rusted and clogged, causing the diversion of water across the road. To alleviate this problem, Mize removed the culvert based on his belief of ownership under the corrected deed and survey.

¶20. Whether we accept or reject the chancellor's finding of malice does not end our inquiry. There remains no evidence of a false publication or a finding by the chancellor of false publication, and absent that element, a slander-of-title claim must fail.

**II.**

¶21. This Court will reverse a chancellor's award of damages only if he commits manifest error. ***Mason***, 828 So. 2d at 739. A claimant who has a bona fide belief of ownership in disputed property will not be found liable for special damages in an action for slander of title. ***Perrien v. Mapp***, 374 So. 2d 794, 798 (Miss. 1979). Even if the party seeking damages can

10

show that he or she endured special damages from the opposing party's claim of title, such damages are inappropriate if the claimant asserts ownership in good faith. *Id*. Similarly, damages arising from the lost sale of disputed property will not be imposed on a party who, in good faith, seeks a determination of ownership of the disputed property. *Dethlefs*, 511 So. 2d at 118.

¶22. Turning again to *Dethlefs*, this Court held that a claimant in a quiet-title action does not have to pay any actual or punitive damages to the opposing party for a lost sale of the property that was halted due to the action. *Id.* In making that conclusion, we relied on the same reasoning as to why Dethlefs was not liable for slander of title. *Id*. One who petitions the court with a bona fide belief of ownership has every right to have his or her case decided, therefore, he or she should not be liable to an opposing party for damages incurred from a lost potential sale of the disputed property due to the pending suit. *Id*.

¶23. Mize asserted his claim, pursued his action, and presented evidence to support a bona fide belief of ownership. Having already established that one finding of malice was dubious, no evidence was presented that Mize falsely published his claim, an essential element. A successful defense of Mize's claim does not entitle Defendants to damages from Mize. As the chancellor committed manifest error in ordering Mize to pay damages to Defendants, we reverse in part.

**CONCLUSION**

¶24. No evidence of record supports a finding that all of the elements of a slander-of-title action were met. Consequently, we reverse the judgment against Mize for slander of title and the award of damages to Defendants as well as the judgment of the Court of Appeals

11

affirming it.  We do not otherwise disturb the findings and judgment of the Court of Appeals or chancery court.  We remand the case to the Lafayette County Chancery Court for the entry of a judgment consistent with this opinion.

¶25.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED IN PART. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS REVERSED IN PART AND THE CASE IS REMANDED**.

     **WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**