# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00006-COA

**TOMMIE L. HUEY**                                                    **APPELLANT**

**v.**

**LEMORRIS STRONG**                                                    **APPELLEE**

DATE OF JUDGMENT:            11/24/2014
TRIAL JUDGE:                HON. JANE R. WEATHERSBY
COURT FROM WHICH APPEALED:  SUNFLOWER COUNTY CHANCERY
                            COURT
ATTORNEY FOR APPELLANT:     ALSEE MCDANIEL
ATTORNEY FOR APPELLEE:      HELEN E. MORRIS
NATURE OF THE CASE:         CIVIL - REAL PROPERTY
TRIAL COURT DISPOSITION:    GRANTED APPELLEE'S REQUEST TO
                            REMOVE CLOUD ON TITLE AND QUIET
                            TITLE; AND DENIED APPELLANT'S
                            COUNTERCLAIM FOR WRONGFUL
                            EVICTION
DISPOSITION:                AFFIRMED: 12/13/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON, FAIR AND GREENLEE, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.    This is a property case between two first cousins involving a lot in Moorhead, Mississippi.  On February 25, 2009, Acey Huey deeded Lot 24 of Palmer Subdivision to his daughter, Fillisa Huey.  He had received the property from his grandmother in the probate of her will; a court order evidencing Acey's title by devise had been recorded in the land records of Sunflower County.

¶2.    A written agreement entitled "Repairing and Renting Agreement" was thereafter

signed by Acey and his brother, Tom Huey, calling themselves "landlords" and Tom's daughter, Tommie Huey, calling herself "tenant." Dated August 7, 2009, and prepared at Tommie's direction by her godmother, the agreement provided that Tommie would pay rent of $150 per month and repair the property at her sole expense. It further stated the landlords could not increase her rent or evict her without reasonable cause. If forced to leave for any other reason, she would be reimbursed for labor and material expended by her on the property, moving expenses, and "pain and suffering." Fillisa was unaware of the agreement's existence until almost three years later.

¶3.     On June 8, 2012, Fillisa sent Tommie an eviction notice by certified mail, directing her to vacate the property. On June 21, 2012, Fillisa sent Tommie a Notice to Pay Rent or Quit, advising Tommie to pay her $800, $400 as a rental deposit and $400 as the first month's rent, within 30 days or remove herself from the property.

¶4.     By deed dated July 25, 2012, Fillisa conveyed the property to LeMorris Strong, who filed the deed on August 14, 2012.

¶5.     On July 27, 2012, the 2009 rental agreement signed by Acey, Tom, and Tommie was filed in the lis pendens records of Sunflower County, attached to a "Notice of Subordination, Attornment and Non-Disturbance Agreement."

¶6.     In November 2012, Strong made a written demand for Tommie to cancel the documents filed on July 27, attaching a cancellation document for that purpose along with a copy of Mississippi Code Annotated section 11-55-5 (Rev. 2004), which provides for an

2

award of costs and attorney's fees for frivolous litigation under the Litigation Accountability Act (LAA) of 1988.

¶7.     After Strong acquired the property, he began to tear down the termite-infested carport. He soon discovered that Tommie had left some personal belongings in the home and that she was still claiming an interest in the home. So he filed an eviction claim in Sunflower County Justice Court on August 6, 2012. The case was dismissed after Tommie's attorney stated that Tommie had completely moved out of the home.

¶8.     In June 2013, Strong filed a complaint to remove clouds and quiet title of the lot in himself. Tommie counterclaimed for wrongful eviction on August 9, 2012. She also filed a cross-claim against Acey and Fillisa, but made no effort to obtain process over them.

¶9.     After a hearing, the Sunflower County Chancery Court entered an order dismissing Tommie's counterclaim and cross-claim, removing clouds and quieting title in Strong, and finding that Tommie's wrongful-eviction defense was frivolous and without merit. The chancellor observed:

> Neither Acey Huey nor Tom Huey had any interest in the property at the time of the rental agreement as it then belonged to Fillisa Huey. On June 4, 2012, Fillisa Huey decided it was time for her cousin to pay rent and sent her an eviction notice . . . . Tommie testified she wanted "everything I can get." Her failure to discharge the lis pendens notice or to file suit against Strong is seen by the [c]ourt as nothing more than an attempt to extort money from Strong . . . . Her counterclaim for wrongful ejection is frivolous and without merit. Tommie's defense against the cancellation of the lis pendens is without substantial justification and appears to the court to be interposed for harassment. Likewise, her counterclaim is without substantial justification.

¶10.    Finding that Tommie "deliberately and without merit placed a cloud upon the title of

3

Strong . . . and refused to remove it upon request," the chancellor also awarded Strong attorney's fees and damages. Tommie appeals. We find no error and thus affirm the chancery court's judgment.

## STANDARD OF REVIEW

¶11. As an appellate court, "we will reverse a chancellor only if he or she commits manifest error." *Mize v. Westbrook Const. Co. of Oxford, LLC* 146 So. 3d 344, 348 (¶6) (Miss. 2014). "We will accept findings made by the chancellor regarding questions of fact and credibility of witnesses, so long as the evidence in the record tends to reflect the chancellor's findings." *Id*.

## DISCUSSION

¶12. Tommie claims that the chancery court committed reversible error in: (1) finding her counterclaim for wrongful eviction frivolous and without merit; and (2) concluding that her lis pendens notice was without justification and awarding attorney's fees.

### 1. Wrongful Eviction

¶13. Tommie argues on appeal that the chancellor erroneously denied her counterclaim for wrongful eviction because she was relying on the documents filed as a lis pendens. However, she admitted under cross-examination that she had never paid $150 per month in rent (nor had she ever paid any rent in any amount). Her father confirmed that, "to his knowledge," rent was never paid.

¶14. But the chancellor found that it was not necessary to show breach of the document

4

under which Tommie claimed tenant status. The chancellor held that the document was void as to Fillisa and Strong both. Tommie's status was found by the chancellor to be "basically a squatter on another's property," further observing that "any claim she may have had to damages should have been lodged against her father and Acey Huey."

¶15. Fillisa, appearing as a witness and not a party, testified she did not learn of the "Repairing & Renting the House" agreement until after she had sold the property to Strong, further affirming that she had received no rent in any amount from Tommie. She denied her father had any authority to act on her behalf in any manner with regard to the property he deeded to her. When asked about why she allowed Tommie to use her house, Fillisa stated that "once it was mentioned to me that my cousin wanted to stay in the house I didn't have an issue with it . . . . I didn't make an issue about it . . . . She was family." She said she intended to borrow money and fix it up, commenting with reference to Tommie, "I don't want any type of confrontation [but] you can't just continue to stay somewhere for free."

¶16. The evidence was clear in the record that Tommie had voluntarily removed herself from the property, if indeed she was occupying it. The removal process began no later than the filing of an action in justice court by Strong, or perhaps the announcement of Tommie and her counsel that the action was unnecessary as she was moving out and it could be dismissed.

¶17. According to Fillisa, when she sold the property to Strong, the only personal property in the house was hers, put there by her for storage in 2009.

5

¶18.   Based on these facts, established by written documents in context of circumstances presented at trial in the testimony of Strong, Tom, Fillisa, Tommie, and a neighbor, we find the chancellor acted within her discretion and relied on substantial evidence in finding Tommie's counterclaim to be frivolous and without merit.

### 2.   Lis Pendens

¶19.   A lis pendens is a Latin phrase for "pending lawsuit" – notice of which is required by statute to be filed in county land records when real estate is a subject of litigation. Mississippi Code Annotated section 11-47-3 (Rev. 2004), the lis pendens statute, states:

> When any person shall begin a suit in any court, whether by declaration or bill, or by cross-complaint, to enforce a lien upon, right to, or interest in, any real estate, unless the claim be founded upon an instrument which is recorded, or upon a judgment duly enrolled, in the county in which the real estate is situated, such person shall file with the clerk of the chancery court of each county where the real estate, or any part thereof, is situated, a notice containing the names of all the parties to the suit, a description of the real estate, and a brief statement of the nature of the lien, right, or interest sought to be enforced . . . .

¶20.   Tommie claims that the chancellor erred in granting Strong's request to remove the clouds on his title and direct cancellation of Tommie's documents on file in the lis pendens records in Sunflower County. Specifically, she argues that she still has rights in the property.

¶21.   The document she filed July 27, 2012, was not notice of a suit. She titled it as a "Notice of Subordination, Attornment and Non-Disturbance Agreement." Tommie attached the "rental agreement" that she, her father, and her uncle signed to the notice. Historically, "attornment" under English law is acknowledgment of a new lord by the tenant on the

6

conveyance of land from a prior landholder to the new landholder. As used in modern legal transactions, attornment refers to acknowledgment of the existence of the relationship of landlord and tenant.

¶22. Mississippi Code Annotated section 89-7-19 (Rev. 2011) provides that "the attornment of a tenant to a stranger shall be void unless it be with the consent of the landlord of such tenant, or pursuant to or in consequence of the judgment of a court of law or the decree of a court of equity." Tommie never had a valid rental agreement because the property was owned by Fillisa when the document was prepared, and later owned by Strong at the time she filed it and affected his title.

¶23. The chancellor found that "Tommie Huey has deliberately and without merit placed a cloud on the title of Strong to the property and refused to remove it upon request" and awarded attorney's fees and costs pursuant to the LAA. She found that $3,217.34 was reasonable based on a rate of $175 per hour.

¶24. The chancellor addressed fees further, stating:

> While filing a lis pendens notice, per se, does not invoke the [LAA,] . . . a defense without substantial justification when interposed for harassment will trigger said fees. *Hooker v. Greer*, 81 So. 3d 103 (Miss. 2012). [Tommie's] denial of the allegation to remove the notice from the records of Sunflower County has no justification whatsoever.

¶25. In *Lehman v. Mississippi Transportation Commission*, 127 So. 3d 277 (Miss. Ct. App. 2013), this Court addressed a claim of slander of title by the filing of a wrongful lis pendens notice, and held:

7

The Mississippi Supreme Court has stated that filing "an instrument which is known to be inoperative, and which disparages the title to land, is a false and malicious statement for which damages may be recovered." *Phelps v. Clinkscales*, 247 So. 2d 819, 821 (Miss. 1971) (citation omitted). Attorney's fees and costs are an element of damages for slander of title. *Welford v. Dickerson*, 524 So. 2d 331, 332 (Miss. 1988). [The LAA] allows attorney's fees to be awarded as a sanction if the court "finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment[.]"

*Lehman*, 127 So. 3d at 279 (¶11).

¶26. In *Hooker*, which the chancellor cited as authority for her decision, Hooker filed a lis pendens against his business partner but took no other action. *Hooker*, 81 So. 3d at 1105 (¶5). The supreme court stated:

Filing a lis pendens is a preliminary action necessary to file a civil action to enforce an interest in property. *See* Miss. Code Ann. §§ 11-47-3, 11-47-9 (Rev. 2002). The lis pendens filing provides notice to the public of an alleged claim on land.

. . . .

While the filing of the lis pendens notice itself does not constitute an "action" subject to the LAA, a defense to an action to remove a lis pendens, filed without substantial justification, may form the basis of an award under the LAA.

. . . .

In any civil action commenced or appealed in any court of record in this state, the court shall award . . . reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, *or asserted any claim or defense*, that is without substantial justification, or that the action, *or any claim or defense asserted, was interposed for delay or harassment* . . . .

8

*Hooker*, 81 So. 3d at 1109 (¶¶18, 20-21) (emphasis added).

¶27.    Following *Lehman* and *Hooker*, and in accord with section 11-55-5(1), the chancellor found Tommie filed the lis pendens without substantial justification and awarded fees and costs of $3,917.14.  We find her award to be supported by substantial evidence and within her discretion.

## CONCLUSION

¶28.    We find the chancellor acted within her discretion in denying Tommie's counterclaim for wrongful eviction and in awarding attorney's fees against Tommie.  Therefore, we affirm.

¶29.    **THE JUDGMENT OF THE CHANCERY COURT OF SUNFLOWER COUNTY IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

     **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON AND GREENLEE, JJ., CONCUR.  JAMES, J., NOT PARTICIPATING.**