# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00196-COA

ZEBE, LLC                                                           APPELLANT

v.

JOHN L. ROBINSON                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/2018 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | T. JACKSON LYONS |
| ATTORNEY FOR APPELLEE: | NATHAN LAMAR PRESCOTT |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 05/19/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., TINDELL AND LAWRENCE, JJ.

### BARNES, C.J., FOR THE COURT:

¶1. This case involves a property boundary disagreement between neighboring landowners, owing to a disputed 2016 property survey filed with the Harrison County Chancery Clerk by one of the landowners, John Robinson. After a period of hostile behavior ensued between the two landowners (e.g., posting "no trespassing" signs, using profane language and gestures, and filing criminal charges), Zebe, LLC (Zebe),[1] the other landowner, filed a complaint against Robinson for slander of title, trespass, removal of cloud of title,

---

[1] Zebe, a limited liability company used to hold title to various real property, is owned and managed by Jerry Gammons and his wife.

boundary establishment, and to confirm title and requested damages and attorney's fees.[2]

After discovery and the filing of pretrial motions, a trial was held, and the Harrison County Chancery Court entered its final judgment on December 28, 2018. As to Zebe's claims of slander of title and trespass, the court granted Robinson's motion for dismissal, finding that while the survey filed by Robinson was incorrect, Robinson's "actions stemmed from his erroneous confidence in rightful ownership to the property" and, thus, "fail[ed] to rise to the level of malice." The court also denied Zebe's request for damages and attorney's fees. The chancery court granted Zebe's request to remove the cloud to title, to establish the boundary line, and to confirm title.

¶2. Zebe appeals, arguing that the chancery court erred in finding that Robinson's actions were not malicious and in denying his claim for damages. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. Robinson and his wife, Mary, owned the following described property at 141 Azalea Drive in Biloxi, Mississippi: "Lots Ten (10) and Eleven (11) and the South One-Half (S ½) of Lot Nine (9), in Block A of Azalea Gardens Subdivision, according to the map or plat of said subdivision on file and of record in the Office of the Chancery Clerk of Harrison County, Mississippi." The Robinsons acquired title to this property on February 14, 2012, from Hancock Bank. Zebe owned a vacant lot north of the Robinsons' property, as well as a rental home located north of the vacant lot. The property Zebe owned is described as

---

[2] Robinson's wife, Mary, was also a named defendant. However, Mary passed away in March 2018, and Zebe elected not to pursue his claims against her estate. Therefore, she is not a party to this appeal.

follows: "Lots 7, 8 and the North one-half of Lot 9 in Block A of Azalea Gardens Subdivision, Biloxi, Second Judicial District, Harrison County, Mississippi." A dispute arose between the parties over the property boundary line in Lot 9, presumably over the replacement of a city drain line on Robinson's portion of Lot 9; so Robinson retained the services of Donald Ried of Ried and Associates LLC, who surveyed the property on September 1, 2016.[3] This survey showed Robinson's property line to be approximately eleven feet north of the fence on Robinson's property. On September 2, Robinson filed and recorded a corrected warranty deed with the chancery clerk, attaching Ried's survey of the property. In the months that followed, Robinson began weed-eating that portion of the property and posted "no trespassing" signs, creating hostility between the Robinsons and Zebe's owner and manager, Jerry Gammons. Robinson had Gammons arrested for allegedly pulling up the survey markers and had Gammons's son arrested for trespass when he came to mow the lot.[4] Gammons accused Robinson of repeatedly harassing his family by making lewd gestures and cursing at them whenever they did maintenance on their property.

¶4. Zebe subsequently had a survey performed by Patrick Martino, which survey showed the Robinsons' property line to be less than two feet north of the fence. On January 17, 2017, Zebe filed a complaint against Robinson, seeking to confirm title and requesting damages for slander of title and trespass. Robinson denied the allegations, and he asserted a counterclaim of adverse possession and sought to confirm title. However, Robinson later abandoned his

---

[3] Although there was some question as to whether the survey was actually performed on September 1 or September 2, for the purposes of this appeal, this fact is irrelevant.

[4] According to Gammons, neither he nor his son was found guilty of any offense.

counterclaims and agreed to abide by Zebe's survey. On April 9, 2018, Robinson filed a motion for partial summary judgment as to the remaining claims, which the court denied.

¶5.     A trial was held on May 14, 2018. Gammons testified that since the filing of the survey, Robinson had engaged in antagonistic behavior toward him and his family, which affected his property's value. However, Gammons admitted he currently had a rental tenant on the property, and he could not affirmatively say that he had been unable to sell the property. Martino, Zebe's surveyor, testified as to the errors he found on Ried's survey. Because Robinson had already agreed to abide by Martino's survey, his testimony was not challenged at trial.[5]

¶6.     Robinson moved for an involuntary dismissal pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure, arguing that Zebe had failed to prove malice and damages. The court denied the motion, and Robinson proceeded with his case. Robinson claimed that the animosity started when Gammons wanted to build a home on the vacant lot, and he got turned down after Robinson and other neighbors complained. He said, from that point, Gammons told Robinson not to set a foot past the fence; so Robinson hired Ried to survey the property. Robinson averred that he had no reason to think that Ried's survey was incorrect; he merely agreed to abide by the Martino survey because he wanted "to live in peace" and "never did want any trouble with [the Gammonses]." Robinson admitted that he had made obscene gestures on occasion but only after Gammons had done so toward him. Robinson also contended that the Gammonses were the ones who had harassed him and his

---

[5] Ried, Robinson's surveyor, did not testify.

late wife, constantly taking photos and filming them anytime they went outside.

¶7.     Mrs. Gammons testified that one of Zebe's renters had wanted to buy the house but not the vacant lot because of Robinson's behavior; so she had to reject the offer because she did not want to divide the property. She admitted they had filmed the Robinsons but claimed that it was only to see if they were trespassing on Zebe's property.

¶8.     One of Zebe's former tenants, who lived in the rental home located next to the vacant lot during this period, testified that he saw Ried conduct the survey but did not see Robinson with him. He also corroborated Robinson's testimony that the Gammonses installed cameras on their property and took pictures of the Robinsons several times a week. Another neighbor testified that she had never witnessed Robinson vandalizing the property and that Robinson and his wife were "friendly" neighbors. After the parties rested, the chancellor requested supplemental briefing on the issue of special damages.

¶9.     The chancery court entered a final judgment on December 28, 2018, granting Robinson's motion for involuntary dismissal as to the claims for slander of title, trespass, and damages. The court partially granted Zebe's complaint as to the request to remove cloud of title, establish the boundary line, and confirm title, but the court dismissed with prejudice Zebe's counterclaim, ordering the parties "to bear their own costs."[6] Zebe challenges the

[6] The chancery court informed the parties of its judgment on November 8, 2018, and Zebe filed a motion for reconsideration on November 9. The chancery court never ruled on the motion. On May 8, 2019, Zebe's counsel, who subsequently filed a request to withdraw his representation, sent an email to Robinson's counsel, stating that the motion for reconsideration would not be pursued and would be removed from the chancery court's docket. However, on May 21, Zebe's newly retained counsel filed a motion to stay the appellate proceedings for lack of jurisdiction and, on May 29, filed a motion to remand for a ruling on the motion to reconsider. On July 26, 2019, the Mississippi Supreme Court

5

court's ruling, contending that the chancery court applied "incorrect legal standards" regarding Zebe's claim for slander of title. Zebe also argues that it was entitled to special damages.

## STANDARD OF REVIEW

¶10. A chancery court's findings will not be disturbed on appeal "unless they are manifestly wrong, clearly erroneous, or apply the wrong legal standard." *Campbell Props. Inc. v. Cook*, 258 So. 3d 273, 275 (¶9) (Miss. 2018) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000)). Questions of law are reviewed de novo. *Id*.

## DISCUSSION

¶11. Zebe appeals the chancery court's finding that because Robinson's actions did not constitute malice, Zebe's claim for slander of title fails, as does his claim for damages. Much of Zebe's argument concerns Robinson's hostile behavior toward the Gammonses in the months following the recording of the corrected deed and Ried's survey on September 2, 2016. Zebe claims that the chancery court failed to take those actions into account in determining whether Robinson acted with malice when recording the deed, and Zebe contends that the court failed to address whether Robinson acted in good faith.

¶12. The Mississippi Supreme Court has held that "'[s]lander of title' . . . describe[s] words or conduct which bring or tend to bring in question the right or title of another to particular property[.]" *Walley v. Hunt*, 212 Miss. 294, 304, 54 So. 2d 393, 396 (1951). "The slander may consist of a statement in writing, printing, or by word of mouth, and may relate

denied Zebe's motions. Therefore, we find this case is properly before us on appeal.

6

to personal as well as real property." *Id*.

> Liability for slander of title may also be predicated on the filing and recording of a false instrument purporting to affect the title to property, or on the execution, wilful acceptance, and malicious recordation of a deed which falsely declares the title of the property involved to be in a person other than the true owner. The malicious filing for record of an instrument *which is known to be inoperative*, and which disparages the title to land, is a false and malicious statement, for which the damages suffered may be recovered.

*Id*. at 305, 54 So. at 396 (emphasis added) (citation omitted). Thus, "in order for [the published statement] to form the basis for a right of action it must have been made, not only falsely, but maliciously." *Id*. As the supreme court held in *Mize v. Westbrook Construction Co. of Oxford LLC*, 146 So. 3d 344, 348 (¶8) (Miss. 2014), "[m]alice . . . may be inferred from one's actions." (Citing *Phelps v. Clinkscales*, 247 So. 2d 819, 821 (Miss. 1971)). "Malice requires a showing of evil intent or ill will toward another, either through conduct or statements, without just cause or excuse." *Id*. at 350 (¶15) (citing Black's Law Dictionary 1109 (4th ed. 1970)).

¶13. However, "a party who commits an act under reasonable belief of title will not be said to have acted maliciously when committing the act." *Id*. at 351 (¶18) (Miss. 2014) (citing *Butler v. City of Eupora*, 725 So. 2d 158, 161 (Miss. 1998)). We find no error in the chancery court's finding that Robinson's actions subsequent to the recording of the Ried survey (weed-eating and posting "no trespassing" signs on the lot) were taken with the erroneous belief that he owned the subject property in question. Furthermore, the court did consider the testimony regarding Robinson's antagonistic behavior toward the Gammonses, stating:

> While the Court examined *all of the actions of the Defendant, to include his*

7

*negative interactions with the Gammonses* and his filing of an incorrect survey in the land records, it nonetheless finds that his actions stemmed from his erroneous confidence in rightful ownership to the property. While the recorded survey was indeed false, Mr. Robinson nevertheless believed in its accuracy. His recording of the survey therefore fails to rise to the level of malice.

(Emphasis added).

¶14. Zebe also claims that Robinson's "uncorroborated and self-serving testimony" was, by itself, insufficient to show that Robinson did not act with malice. Zebe cites *Estate of Johnson v. Johnson*, 237 So. 3d 698, 711-13 (¶¶36-41) (Miss. 2017), a case in which the supreme court analyzed whether a daughter's actions in transferring ownership of her deceased mother's certificates of deposit was a product of undue influence. Finding the daughter "failed to rebut the presumption" that she acted in good faith, the *Johnson* court noted that "[n]othing more than [the daughter's] testimony was provided to support" her claims. *Id*. at 712 (¶¶39-41).

¶15. We find no merit to Zebe's argument that *Johnson* stands for the proposition that a party's uncorroborated testimony is insufficient to prove that the party acted without malice. In this case, the chancellor, as the trier of fact, was within her discretion to determine the credibility of Robinson's testimony in finding that his actions, while misguided, were not malicious. *See Stuckey v. Waid*, 195 So. 3d 872, 876 (¶17) (Miss. Ct. App. 2016) ("The trier of fact is not this court but the chancellor, who heard the testimony of the witnesses, determined their credibility, weighed that and other evidence, and made a decision within her discretion."). Therefore, we do not find that the chancery court erred in dismissing Zebe's claims for slander of title and trespass.

8

¶16. We further conclude that Zebe's claim for special damages must also fail. "[T]he general rule of liability for slander of title is stated as follows: 'One who falsely and maliciously publishes matter which brings in question or disparages the title to property, thereby causing special damage to the owner, may be held liable in a civil action for damages.'" *Walley*, 212 Miss. at 304, 54 So. 2d at 396 (citation omitted). However, "[a] claimant who has a bona fide belief of ownership in disputed property will not be found liable for special damages in an action for slander of title." *Mize*, 146 So. 3d at 351 (¶21) (citing *Perrien v. Mapp*, 374 So. 2d 794, 798 (Miss. 1979)). "Even if the party seeking damages can show that he or she endured special damages from the opposing party's claim of title, such damages are inappropriate if the claimant asserts ownership in good faith." *Id*. While not condoning Robinson's behavior toward the Gammonses, the chancellor determined "that his actions were taken in his legitimate, albeit flawed, belief in the veracity of his survey." Therefore, the court denied Zebe's claim for damages because of Robinson's "bona fide belief of ownership in the disputed property." We find the chancery court's decision not to award Zebe special damages is supported by the evidence and testimony at trial.

¶17. Accordingly, we affirm the chancery court's judgment.

¶18. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**